IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METLIFE, INC., <br><br> Plaintiff, <br><br> v. <br><br> FINANCIAL STABILITY OVERSIGHT COUNCIL, <br><br> Defendant. | Civil Action No. 1:15-cv-45 (RMC) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
DISCLOSURE OF WITHHELD AND REDACTED RECORD MATERIALS**

According to the Financial Stability Oversight Council ("FSOC"), it is under no obligation to disclose the nearly 900 pages of withheld record materials to MetLife, Inc., or to this Court, because those documents are "only marginally additive" to the record materials that FSOC has disclosed. FSOC Opp. 14. In FSOC's view, the already-disclosed materials provide "more than sufficient information" to enable MetLife to mount a meaningful legal challenge to its designation as a nonbank systemically important financial institution ("nonbank SIFI") and for this Court to adjudicate MetLife's claim. *Id.* at 13. But that *ipse dixit*—which it is impossible for either MetLife or this Court to verify—falls far short of the compelling justification that would be required to override MetLife's right under the Administrative Procedure Act ("APA") and the Due Process Clause to challenge its designation based on the *complete* record on which FSOC relied in making that decision. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). Without access to the withheld documents, MetLife has no way of knowing whether FSOC arbitrarily and capriciously disregarded record materials that were inconsistent with its designation decision.

Nor does FSOC provide any explanation as to why the existing Protective Order—which restricts access to confidential materials to MetLife's outside counsel and litigation consultants—would be inadequate to safeguard the confidentiality of the materials that the New York and Connecticut insurance regulators have asked FSOC not to disclose.  In fact, the Memoranda of Understanding between FSOC and the state insurance regulators expressly recognize that a protective order may be sufficient "to preserve, protect, and maintain the confidentiality of the Non-Public Information and any privileges associated therewith."  Connecticut Memorandum of Understanding ("MOU") II.C.5(a); New York MOU II.C.5(a).  The Protective Order—which was carefully negotiated by the parties and approved by this Court—strikes the appropriate balance between the confidentiality concerns of the state insurance regulators and MetLife's right to present a fully informed challenge to FSOC's designation decision.  The Court should compel disclosure of the remaining record materials subject to the terms of that order.

**ARGUMENT**

MetLife respects the important regulatory role played by the New York Department of Financial Services ("NYDFS"), Connecticut Insurance Department ("CID"), and other state insurance regulators.  In particular, the supervisory colleges in which those regulators participate are a valuable and highly effective means for regulators from different States to coordinate their oversight of insurance companies that have operating subsidiaries in multiple States.  Far from supporting the withholding of record materials, however, the importance of these supervisory colleges to the States' regulation of insurance only underscores MetLife's urgent need for access to *all* record materials generated during those proceedings.  In particular, if there were documents produced to FSOC by MetLife's state regulators that undermine FSOC's rationale for designating MetLife as a nonbank SIFI, but that the agency chose to ignore in its Final

Designation, then MetLife and this Court have a right to know about FSOC's selective use of the administrative record. *See Heckler*, 749 F.2d at 792 ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

Neither of the two Dodd-Frank provisions invoked by FSOC authorizes the agency to withhold record materials simply because state regulators have asked it to do so. Under Section 112(d)(5)(A), FSOC is obligated to "maintain the confidentiality of any data, information, and reports submitted" to it as part of the SIFI designation process and for other statutorily enumerated purposes. 12 U.S.C. § 5322(d)(5)(A). But the Protective Order entered by this Court—which would afford MetLife's outside counsel and litigation consultants access to those confidential materials while barring MetLife employees from reviewing the documents—is fully adequate to preserve that confidentiality. *See In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation. Such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation.").

Under FSOC's view, Section 112(d)(5)(A) would authorize the agency to withhold from a company designated as a nonbank SIFI, and from a court reviewing that designation, *any* nonpublic information that a third party produced to FSOC during the designation process. There is no indication in the text or legislative history of Dodd-Frank that Congress intended to create such an opaque designation process or such an ineffectual mode of judicial review, and thereby to deny designated companies their due process right to a full and fair "opportunity to be heard" during both the designation process and ensuing court proceedings. *Hansberry v. Lee*,

311 U.S. 32, 40 (1940); *see also Gomez v. United States*, 490 U.S. 858, 864 (1989) ("It is our

settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if

a reasonable alternative interpretation poses no constitutional question.").  In fact, Congress

made clear in Section 112(d)(5)(C)—a provision that appears nearly immediately below the

statutory language that FSOC invokes—that the Freedom of Information Act "shall apply to any

data or information submitted" to FSOC as part of the designation process and other statutorily

enumerated data-collection efforts, 12 U.S.C. § 5322(d)(5)(C), which is fundamentally

incompatible with FSOC's position that Section 112(d)(5)(A) requires that this material

invariably be kept confidential.

FSOC derives equally little support from Section 112(d)(5)(B), which provides that the

"submission of any nonpublicly available data or information" to FSOC as part of the

designation process "shall not constitute a waiver of, or otherwise affect, any privilege arising

under Federal or State law."  12 U.S.C. § 5322(d)(5)(B).  MetLife is not contending that NYDFS

and CID waived the state-law privileges that they claim apply to the withheld record materials

when they disclosed those materials to FSOC.  The fact that the materials may be privileged

under state law, however, cannot override FSOC's obligation under the APA and federal due

process to disclose those "materials that were before the agency at the time its decision was

made" in order to facilitate meaningful judicial review of its decision-making.  *IMS, P.C. v.

Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997).  As the Memoranda of Understanding between

FSOC and the state regulators contemplate, those state-law privileges, like lower levels of

confidentiality, can be "preserve[d], protect[ed], and maintain[ed]" through a "protective order."

Connecticut MOU II.C.5(a); New York MOU II.C.5(a); *cf. In re Guantanamo Bay Detainee

Continued Access to Counsel*, 892 F. Supp. 2d 8, 27-28 (D.D.C. 2012) (describing the

effectiveness of a protective order that the government had requested "specifically to protect classified information").

FSOC provides no reason to doubt that the existing Protective Order is sufficient to safeguard the state regulators' confidential and privileged information. And the regulators themselves provide nothing to substantiate their speculation that the disclosure to MetLife's outside counsel and litigation consultants of a few hundred pages of each regulator's supervisory-college material, as well as a "small number of additional documents" obtained through "bilateral[ ] exchange[s]" with other regulators (FSOC Opp. 7 n.4), will have an indelible "chilling effect upon regulator discourse," Belfi Decl. ¶ 15, and "damag[e] . . . the ability of supervisory colleges to have full and frank exchanges." McLeod Decl. ¶ 15. In fact, it is well-settled that the public-interest privilege on which the NYDFS relies is not "absolute" and that the question whether "the privilege attaches in a particular setting is a fact-specific determination for a fact-discretion weighing court, operating in camera, if necessary." *In re World Trade Ctr. Bombing Litig.*, 709 N.E.2d 452, 456 (N.Y. 1999). Thus, in New York at least, there has always existed the possibility that materials generated during a supervisory college would be found non-privileged and subject to production in litigation or elsewhere. Yet, that possibility has not undermined the effectiveness of the NYDFS's regulation of insurance companies or hampered its participation in supervisory colleges. There is likewise no reason to believe that the limited production of less than a thousand pages of material to MetLife's outside counsel and consultants for the sole purpose of this litigation will have a detrimental impact on regulators' open and robust dialogue at future supervisory colleges. FSOC's nonbank SIFI designations are rare—MetLife's designation was only the fourth—and if state regulators are concerned about disclosure from future FSOC designation decisions, they can give less data to

FSOC—which characterizes the data at issue as "only marginally additive" in any event.  FSOC Opp. 14.

Nor is FSOC able to identify a single case holding that, in a judicial proceeding initiated by a party that was the subject of an adverse agency adjudication, the agency may withhold a portion of the record on which the adjudication was based simply because the agency made a promise to a third party not to disclose that information.  All of the cases on which FSOC relies arose in materially distinguishable contexts.  *See, e.g.*, *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554 (D.C. Cir. 2002) (rulemaking challenge); *MD Pharm., Inc. v. DEA*, 133 F.3d 8 (D.C. Cir. 1998) (third party's challenge to DEA's approval of a competitor's drug-manufacturing application); *Serono Labs., Inc. v. Shalala*, 35 F. Supp. 2d 1 (D.D.C. 1999) (third party's challenge to FDA's approval of a competitor's drug); *Atchison, Topeka & Santa Fe Ry. Co. v. Alexander*, 480 F. Supp. 980 (D.D.C. 1979) (challenge to Army Corps of Engineers' construction plans on the Mississippi River).  While there may well be circumstances where the federal government's *own* interests—in national security or the confidentiality of its attorney-client communications, for example—could override a party's right to access the full record on which an adjudication was based, or where the interests of a *third party* challenging agency action are insufficient to override the rights of persons who submitted confidential materials to the agency, those fact patterns are far different from this case, where the government itself is not claiming a privilege and where MetLife is no third party but the *direct object* of adverse agency action that could have a profound impact on the company and its shareholders, employees, customers.  In these circumstances, the government's side agreement with third-party regulators cannot take precedence over MetLife's right under the APA and Due Process Clause to mount a fully

informed challenge to FSOC's designation decision, which can only be accomplished if both MetLife and this Court are afforded access to the full record on which that decision was based.

| | |
|---|---|
| Dated: July 30, 2015 | /s/ Eugene Scalia |
| | Eugene Scalia (D.C. Bar No. 447524) |
| | *Counsel of Record* |
| | EScalia@gibsondunn.com |
| | Amir C. Tayrani (D.C. Bar No. 490994) |
| Indraneel Sur (D.C. Bar No. 978017) | Ashley S. Boizelle (D.C. Bar No. 1010322) |
| GIBSON, DUNN & CRUTCHER LLP | GIBSON, DUNN & CRUTCHER LLP |
| 200 Park Avenue | 1050 Connecticut Avenue, N.W. |
| New York, NY  10166-0193 | Washington, D.C.  20036 |
| Telephone:  (212) 351-4000 | Telephone:  (202) 955-8500 |
| Facsimile:  (212) 351-4035 | Facsimile:  (202) 467-0539 |

*Attorneys for Plaintiff MetLife, Inc.*