UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METLIFE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 15-0045 (RMC) |
| | ) |
| FINANCIAL STABILITY | ) |
| OVERSIGHT COUNCIL, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

On May 8, 2015, Defendant Financial Stability Oversight Council (FSOC) provided a certified administrative record to Plaintiff MetLife, Inc. *See* Mot., Att. 1 [Dkt. 17-1] (Certified Index of Administrative Record). That certification included a declaration from Patrick Pinschmidt, Deputy Assistant Secretary for FSOC, stating that certain of the "non-privileged documents considered, directly or indirectly, in the Council's determination" were nonetheless "redacted or withheld" because they "contain[ed] confidential business information of entities other than MetLife or [were] internal, predecisional, and deliberative in nature." *Id.* ¶¶ 3, 4. Mr. Pinschmidt explained that such documents "were provided to the Council under information-sharing agreements with other entities." *Id.* ¶ 4. Once a protective order was issued by this Court, Dkt. 38, FSOC produced the majority of the documents previously withheld.

Still outstanding are those 32 documents (between 500 and 900 pages) that New York and Connecticut insurance regulators have asked FSOC to continue withholding. MetLife has moved to compel disclosure of the documents, and FSOC has opposed. *See* Mot. to Compel [Dkt. 50] (Mot.); Opp'n [Dkt. 52]. The motion will be granted.

1

FSOC first cites its duty under the Dodd-Frank Act, 12 U.S.C. § 5322(d)(5)(A), to "maintain the confidentiality of any data, information, [or] reports submitted under this subchapter." The argument disregards the Administrative Procedure Act's presumptive guarantee of review based on the entire record. *See* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party . . . ."); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."). FSOC's reading would also frustrate the judicial review afforded by Dodd-Frank itself, 12 U.S.C. § 5323(h). And certainly Dodd-Frank did not, and cannot, trump the 5th Amendment's guarantee of due process (upon which MetLife also relies).

To the main point, however, the protective order in this case does "maintain the confidentiality" of the information sought.[1] The parties have proven adept at redacting confidential information pursuant to the protective order; there is no reason to doubt that they will continue doing so.[2] And if the material truly is "at best, marginally additive," Opp'n at 2, then MetLife is unlikely to rely upon it in the first place. But MetLife must make that determination; it need not take FSOC's word that "these materials were not relied upon by the

---

[1] Apparently "New York and Connecticut regulators do not think the existing Protective Order is sufficiently protective." Opp'n at 9 n.7. Their concerns are not further elucidated. Notably, FSOC stipulated to the terms of the protective order. *See* Joint Mot. [Dkt. 35].

[2] FSOC worries that "MetLife has signaled that it may seek additional disclosure authority in the future, providing access to in-house counsel." Opp'n at 9 n.7. Unless the Court modifies the current protective order, confidential material may not be shown to any MetLife employee, including in-house counsel. The States' concerns are not frivolous, and a request for such a modification would be very unlikely to succeed.

Council in support of its final determination," especially when FSOC admits that they were "reviewed by the staff of Council members and member agencies." Opp'n at 14.[3]

FSOC argues second that the 32 documents are privileged under State law. New York recognizes a "public interest privilege," which protects "confidential communications between public officers, and to public officers, in the performance of their duties, *where the public interest requires* that such confidential communications or the sources should not be divulged." *Zheng v. Bermeo*, 980 N.Y.S.2d 541, 543 (N.Y. 2014) (emphasis added) (quoting *Matter of World Trade Ctr. Bombing Litig.*, 709 N.E.2d 452, 456 (N.Y. 1999)). Assuming that the documents in question were qualifying communications, the Court must still determine whether the public interest requires withholding them.

FSOC also cites Connecticut General Statute § 38a-137 (2012) for the proposition that "information shared by insurance regulators in a supervisory college is privileged." Opp'n at 4. That section applies to "information reported, furnished or filed pursuant to sections 38a-135," which governs "supervisory colleges." *See* Conn. Gen. Stat. § 38a-135(n). The effect of the statute is to deem such information "confidential by law and privileged." *Id.* § 38a-137(a). That privilege, however, is clearly meant to protect the insurance company:

> The commissioner shall not make such information, documents, materials or copies public *without the prior written consent of the insurance company to which it pertains* unless the commissioner, after giving the insurance company and its affiliates who would be affected thereby notice and opportunity to be heard, determines that the interests of policyholders, securityholders or the public will be served by the publication thereof, in which event the commissioner may publish all or any part thereof in such manner as the commissioner may deem appropriate.

---

[3] This also ignores the possible argument by MetLife that FSOC *should have* relied on the information at hand, *i.e.*, that it was arbitrary and capricious to ignore it.

3

*Id.* (emphasis added).  Needless to say, MetLife consents to a disclosure to its outside counsel on this occasion; Connecticut's commissioner is therefore free to disclose it.  But consent is a moot question, as the information will be disclosed under the Court's protective order and thus not "ma[d]e . . . public."  *Id.*

In sum, the State-privilege argument falls short.  Under Dodd-Frank, it is clear that providing information to FSOC does not waive any state law privilege that the state commissioners may claim.  12 U.S.C. § 5322(d)(5)(B).  But it is not clear that either privilege bars production (under the protective order) of the documents at issue.  Even if it does, the New York privilege leaves ample room for this Court to make a "fact-specific determination" that "the public interest" does not require withholding.  *In re World Trade* Center, 709 N.E.2d at 456.  In these circumstances, where Congress has provided for judicial review of the agency's decisionmaking process and a protective order is in place, the public interest weighs in favor of disclosure.  The Connecticut privilege suggests that it protects *insurers*; FSOC's argument would thus turn the Connecticut law from a shield for the insurers into a sword against them.  Under Connecticut law, with MetLife's permission, the Connecticut Commissioner is free to make the information public—which he is not doing here, as a protective order is in place.

The Court is not insensitive to FSOC's concerns, but this production was an inevitable (and foreseeable) consequence of gathering the information and reviewing it as part of MetLife's designation.  *See* 12 U.S.C. § 5323(h) (providing for judicial review of designation decisions).  It was FSOC's choice to request the information, and the regulators' choice to give it.  Their memoranda of understanding are irrelevant; they cannot bargain among themselves to diminish MetLife's right to challenge the full record considered by the agency.

To alleviate any lingering concern, the Court will reiterate the safeguards in place. *See generally* Protective Order [Dkt. 38]. The documents at issue may only be viewed by "Qualified Persons," which means "MetLife's counsel of record in this litigation." *Id.* § 2.4(a). That does not include MetLife's in-house counsel or anyone else at MetLife. It does not include any attorney who has not entered an appearance in this case.[4] If MetLife's counsel of record find it "reasonably necessary . . . for purposes of use in this litigation," they may disclose the information to "Oliver Wyman, Sullivan & Cromwell LLP, Sidley Austin LLP, [or the] Promontory Financial Group, LLC." *Id.* § 2.4(c). Any such recipient becomes bound by the terms of the Protective Order and must be apprised of his obligations thereunder. *Id.* §§ 3.1, 3.3. Should MetLife desire to use any of this information in court filings, it must abide by the protections in paragraph 3.5. Finally, MetLife's counsel may not release or use the information on behalf of its other clients.

The Protective Order in place is sufficient to guard against the concerns raised in FSOC's opposition to the motion to compel. In addition, of course, it may be modified as necessary. Accordingly, it is

**ORDERED** that the Motion to Compel, Dkt. 50, is **GRANTED**; and it is

**FURTHER ORDERED** that the parties shall meet, confer, and file by **December 15, 2015** a proposed schedule for producing the documents at issue and a schedule for supplementing, if necessary, the dispositive motions currently pending.

Date: December 8, 2015                                /s/
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge

---

[4] Those attorneys may, consistent with the Protective Order, disclose information to their "employees . . . including paralegals, technical support staff, and administrative assistants," but only when "reasonably necessary . . . for purposes of use in this litigation." *Id.* ¶ 2.4(b).