IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

METLIFE, INC.,

　　　　　　　　Plaintiff,

　　v.

FINANCIAL STABILITY OVERSIGHT
COUNCIL,

　　　　　　　　Defendant.

Civil Action No. 1:15-cv-45 (RMC)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO BETTER MARKETS' MOTION TO INTERVENE AND
CONTINGENT APPLICATION FOR AN ORDER TO SHOW CAUSE WHY THE
<u>RECORD SHOULD NOT BE UNSEALED</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 6

    I.      Better Markets Does Not Meet The Criteria For Permissive Intervention ............ 7

          A.      Better Markets' Motion To Intervene Is Untimely And Could Cause Serious Delay And Prejudice ..................................................................... 7

          B.      Better Markets Lacks A Claim Or Defense Sharing A Common Question Of Law Or Fact With This Case ................................................. 11

    II.     If Better Markets Is Granted Leave To Intervene, Its Application For An Order To Show Cause Should Be Denied ............................................................ 13

          A.      Dodd-Frank's Confidentiality Provision Forecloses Better Markets' Request To Unseal The Record .................................................. 13

          B.      Better Markets' Application For An Order To Show Cause Also Fails Under The Six-Factor *Hubbard* Framework ................................... 17

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

\* *Amador Cnty. v. U.S. Dep't of the Interior*,
  772 F.3d 901 (D.C. Cir. 2014) ....................................................................... 8, 9, 10

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
  714 F. Supp. 2d 1 (D.D.C. 2010) ............................................................................ 11

\* *EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ................................................................. 10, 11, 12

\* *EEOC v. Nat'l Children's Ctr., Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) ........................................................................ 17, 18

*In re Fort Totten Metrorail Cases*,
  960 F. Supp. 2d 2 (D.D.C. 2013) ..................................................................... 17, 22

*Hamiduva v. Obama*,
  No. CV 08-1221(CKK), 2015 WL 5176085 (D.D.C. Sept. 3, 2015) ..................... 20

*Huntsman-Christensen Corp. v. Entrada Indus., Inc.*,
  639 F. Supp. 733 (D. Utah 1986) ............................................................................ 16

*Jessup v. Luther*,
  227 F.3d 993 (7th Cir. 2000) ................................................................................... 13

*NAACP v. New York*,
  413 U.S. 345 (1973) ............................................................................................. 7, 8

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ................................................................................................ 21

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) ...................................................................................... 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  300 F.R.D. 19 (D.D.C. 2013) .................................................................................. 12

*Roane v. Leonhart*,
  741 F.3d 147 (D.C. Cir. 2014) .................................................................................. 9

\* *In re Sealed Case*,
  237 F.3d 657 (D.C. Cir. 2001) ................................................................... 14, 16, 20

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996) .............................................................................. 8

*Union Oil Co. of Cal. v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ................................................................................... 16

\* Authorities upon which MetLife, Inc. chiefly relies are marked with an asterisk.

*United States v. British Am. Tobacco Australia Servs., Ltd.*,
   437 F.3d 1235 (D.C. Cir. 2006) ........................................................................ 9, 10

\* *United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) .............................. 2, 7, 13, 14, 17, 18, 19, 20, 21, 22

*United States v. Ritchie Special Credit Invs., Ltd.*,
   620 F.3d 824 (8th Cir. 2010) .................................................................................... 8

*United States ex rel. Schweizer v. Oce, N.V.*,
   577 F. Supp. 2d 169 (D.D.C. 2008) ........................................................................ 18

*Upshaw v. United States*,
   754 F. Supp. 2d 24 (D.D.C. 2010) .......................................................................... 20

*Washington Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) ................................................................................ 18

**Statutes**

2 U.S.C. § 437g(a)(12)(A) ........................................................................................ 14

5 U.S.C. § 552(b)(4) .......................................................................................... 3, 4, 21

12 U.S.C. § 5322(d)(5) ........................................................................................... 4, 6

\* 12 U.S.C. § 5322(d)(5)(A) ............................................................. 1, 2, 3, 14, 15, 20

12 U.S.C. § 5322(d)(5)(B) ........................................................................................... 3

12 U.S.C. § 5323 ..................................................................................................... 14

12 U.S.C. § 5323(h) ....................................................................................... 4, 16, 21

52 U.S.C. § 30109(a)(12)(A) ................................................................................... 14

**Regulations**

12 C.F.R. § 1301.10(c) ............................................................................................. 3, 4

12 C.F.R. § 1310.20 .................................................................................................... 4

12 C.F.R. § 1310.20(e) ............................................................................................... 4

12 C.F.R. § 1310.20(e)(1) ..................................................................................... 4, 21

**Other Authorities**

Fed. R. Civ. P. 24(b) .................................................................................................... 1

\* Fed. R. Civ. P. 24(b)(1)(B) ........................................................................ 6, 7, 11, 12

\* Fed. R. Civ. P. 24(b)(3) .......................................................................... 6, 7, 8, 9, 10

FSOC Rules of Organization § XXX.10 ................................................................ 4, 21

iii

## INTRODUCTION

Six months after Better Markets, Inc., received notice that confidential information was being filed under seal in this case, it now seeks leave to intervene in order to file an application to unseal those materials. Far from identifying a particularized interest in the sealed materials, however, Better Markets invokes "the same presumptive right of access to judicial records that every member of the public may invoke." Mot. 3. Better Markets' belated assertion of a generalized interest it supposedly shares with all other members of the public falls well short of the standard for granting permissive intervention. In any event, Better Markets' intervention in this case would be futile because Congress has authoritatively determined that the materials that Better Markets seeks to unseal must remain confidential. *See* 12 U.S.C. § 5322(d)(5)(A). Better Markets' motion to intervene—as well as its contingent application for an order to show cause— should therefore be denied.

As a threshold matter, Better Markets should not be granted leave to intervene in this case because it does not meet two of the prerequisites to permissive intervention established by Federal Rule of Civil Procedure 24(b). First, Better Markets' motion to intervene is untimely because it comes many months after the parties' initial filings under seal in this case and will not be ripe for decision until less than a month before oral argument on the pending cross-motions for summary judgment, which raises the possibility of severe prejudice to the parties and unwarranted delay in the resolution of this case. In addition, Better Markets lacks a "claim or defense that shares . . . a common question of law or fact" with this litigation, Fed. R. Civ. P. 24(b), because its only asserted interest in this case is as "a member of the public" seeking to enforce the "public's right of access to judicial records." Mot. 20, 21. But the D.C. Circuit has never held that such a generalized interest in public access is sufficient to satisfy the

requirements of permissive intervention.  If this Court were to break new ground by doing so here, it would open the floodgates to intervention by any member of the public in any case in which a filing is submitted under seal.

Moreover, even if Better Markets did meet the requirements for intervention, it still would not be entitled to access to the sealed materials in this case because its application for an order to show cause is legally baseless.  Congress determined when it enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act" or "Dodd-Frank") that "any data, information, and reports" submitted to the Financial Stability Oversight Council ("FSOC") during the agency's process for designating nonbank systemically important financial institutions ("nonbank SIFIs") must remain "confidential[ ]."  12 U.S.C. § 5322(d)(5)(A). MetLife did not forfeit those confidentiality protections when it exercised its statutory right to seek judicial review of FSOC's designation decision.  Nor can Better Markets' invocation of the public's generalized "right of access" override the congressional mandate of confidentiality. That is particularly true in this case, where the parties have negotiated in good faith to file public briefs with very limited redactions as well as a public version of FSOC's Final Designation that provides access to the agency's reasoning without compromising the proprietary commercial information that MetLife submitted to FSOC under a statutory guarantee of confidentiality. Better Markets' request to unseal the record would upend that delicate balance between the public's right of access and MetLife's well-founded concerns regarding its highly sensitive proprietary information, and would impose on both the parties and the Court the unwarranted burden of line-by-line confidentiality review on the eve of oral argument.  That outcome is foreclosed by both Dodd-Frank and this Court's settled common-law framework for evaluating motions to unseal.  *See United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).

**BACKGROUND**

The Dodd-Frank Act establishes substantive standards and procedural requirements that

FSOC must follow when evaluating whether to designate a company as a nonbank SIFI.

Because of the sensitive nature of the agency's designation inquiry—which includes an in-depth

examination of a company's operations and finances—the Dodd-Frank Act requires that FSOC

"maintain the confidentiality of any data, information, and reports submitted" to it as part of the

designation process.  12 U.S.C. § 5322(d)(5)(A).  The Act further makes clear that "[t]he

submission of any nonpublicly available data or information" as part of the designation inquiry

"shall not constitute a waiver of, or otherwise affect, any privilege arising under Federal or State

law (including the rules of any Federal or State court) to which the data or information is

otherwise subject."  *Id.* § 5322(d)(5)(B).  Those statutory provisions—and the rules and

regulations that FSOC has promulgated thereunder—govern the public availability of

information throughout FSOC's designation process and any ensuing suit challenging FSOC's

designation decision.

FSOC notified MetLife that it was under consideration for designation as a nonbank SIFI

in July 2013.  During the following eighteen-month period, MetLife submitted hundreds of pages

of nonpublic material to the agency regarding its business model and balance sheet to support its

position that the Company does not meet the criteria for designation.  JA 759-2327.  With respect

to each of those submissions, MetLife expressly invoked the confidentiality protections of the

Freedom of Information Act ("FOIA") and FSOC's own rules and regulations.  In particular,

MetLife invoked the FOIA exception for "trade secrets and commercial or financial

information," 5 U.S.C. § 552(b)(4); *see also* 12 C.F.R. § 1301.10(c), as well as the provisions of

FSOC's rules and regulations effectuating its obligation under Dodd-Frank to maintain the

confidentiality of materials submitted to the agency by companies under consideration for

designation.  *See* 12 C.F.R. § 1310.20(e)(1) ("The Council shall maintain the confidentiality of

any data, information, and reports submitted under this part."); FSOC Rules of Organization

§ XXX.10 (same); *see also, e.g.*, JA 804 ("MetLife hereby requests confidential treatment for

this Voluntary Submission . . . .") (citing 5 U.S.C. § 552(b)(4), 12 C.F.R. § 1301.10(c), 12 C.F.R.

§ 1310.20, FSOC Rules of Organization § XXX.10).

   The designation process culminated in FSOC's Final Designation of MetLife in

December 2014.  The agency prepared a public version of its Final Designation—which did not

include any of MetLife's confidential commercial information, JA 728-58—as well as a more

extensive version that was "not contemplated for public release."  JA 342 (citing 12 U.S.C.

§ 5322(d)(5), 12 C.F.R. § 1310.20(e)).  It is FSOC's practice not to disseminate the nonpublic

versions of its final designations—not even to other companies that are under consideration for

designation and that expressly request access to the agency's precedents.  *See, e.g.*, Letter from

Ryan Law to Nikesh Jindal (Feb. 19, 2014) (denying MetLife's FOIA request for the final

decision designating Prudential Financial, Inc.).

   After MetLife invoked its statutory right to challenge FSOC's designation decision in this

Court, 12 U.S.C. § 5323(h), the parties worked together to formulate a proposed approach to

redactions that would strike the appropriate balance between the public's interest in these

proceedings, on the one hand, and the confidentiality of MetLife's proprietary business

information and the other nonpublic aspects of the agency record, on the other.  To that end, the

parties—with this Court's authorization—filed sealed versions of each of their briefs as well as

public versions that contained minimal redactions to protect MetLife's confidential information

and other nonpublic material in the record.  *See, e.g.*, ECF No. 18-1 (FSOC's sealed

memorandum in support of its motion for summary judgment); ECF No. 22-1 (FSOC's public, redacted memorandum in support of its motion for summary judgment); Minute Order of May 8, 2015 (granting FSOC leave to file its memorandum in support of its motion for summary judgment under seal).  The parties continued to meet and confer about the appropriate scope of redactions to their briefs, and thereafter filed public versions of their briefs that pared back the already-modest redactions.  For example, only *six lines* of FSOC's *61-page* memorandum in support of its motion for summary judgment are redacted, *see* ECF No. 84-1, and only *29 lines* of MetLife's *70-page* memorandum in support of its motion for summary judgment are redacted, *see* ECF No. 86-1.

The parties—again with this Court's authorization—also redacted confidential information from the joint appendix.  *See* ECF No. 69 (sealed joint appendix); ECF No. 85 (public, redacted joint appendix); Minute Order of Sept. 3, 2015 (granting the parties leave to file the joint appendix under seal).  While the public joint appendix redacts in full the confidential materials that MetLife submitted to FSOC during the designation process, the parties undertook the time-consuming task of redacting the Final Designation on a line-by-line basis, even though they were under no statutory or regulatory obligation to do so.  The parties filed the redacted version of the Final Designation as part of the public joint appendix, JA 341-727, along with hundreds of additional pages of material regarding FSOC's designation process, including correspondence between MetLife and FSOC, *see, e.g.*, JA 62, 65, 2513, 2517, 2734, 2737, 2739, 2743, correspondence between state insurance officials and FSOC, JA 2680, 2686, 2764, 2773, 2781, 2825, 2837, 2864, and the transcript of MetLife's oral hearing before FSOC, JA 2372.

The parties prepared the redacted Final Designation in advance of the deadlines for *amicus curiae* briefs so that the *amici* could refer to the final decision in preparing their briefs.  A

total of eight *amicus curiae* briefs—four in support of each party—were filed without any of the *amici* suggesting that their arguments were in any way inhibited by the redactions to the parties' briefs or by a lack of access to the agency record.

Better Markets was one of the *amici* that sought and received leave to file a brief in this case. It submitted an *amicus curiae* brief in support of FSOC on May 22, 2015. ECF No. 33-2. Better Markets did not file its motion to intervene until November 19, 2015, more than six months after the parties filed their first brief under seal and nearly two and a half months after they filed the joint appendix under seal.

## ARGUMENT

Better Markets' motion to intervene is flawed in two significant respects. First, the motion is untimely and raises the possibility of serious prejudice and delay because it was filed more than six months after Better Markets received notice of the initial submissions under seal in this case and will not be fully briefed until less than a month before oral argument. *See* Fed. R. Civ. P. 24(b)(1)(B), (b)(3). Second, Better Markets lacks "a claim or defense that shares . . . a common question of law or fact" with MetLife's suit, Fed. R. Civ. P. 24(b)(1)(B), because its intervention request is premised on a generalized "right of access to judicial records" that is no different from the interest shared by every other member of the public. Mot. 2. The Court should therefore deny Better Markets' motion to intervene without addressing its contingent application for an order to show cause.

If Better Markets is nevertheless permitted to intervene, its application for an order to show cause why the record should not be unsealed must still be denied because Congress has already made the decision in the Dodd-Frank Act to protect the confidentiality of material submitted to FSOC during the designation process. 12 U.S.C. § 5322(d)(5). The documents that

Better Markets is seeking to unseal either were submitted to the agency during its evaluation of MetLife as a potential nonbank SIFI, or are court filings that refer to information submitted to the agency during that process, and are therefore statutorily exempt from public disclosure.  The same result is compelled by the traditional common-law factors that the D.C. Circuit uses to evaluate motions to unseal.  Those factors weigh overwhelmingly in favor of maintaining the confidentiality of MetLife's highly sensitive commercial information and the other nonpublic information submitted to FSOC because publicly disclosing those materials would severely prejudice MetLife.  *See Hubbard*, 650 F.2d at 317-22.  In addition, the public has already been afforded extensive access to these proceedings through the parties' submission of minimally redacted briefs and a public version of the joint appendix that encompasses several hundred pages of previously unreleased record materials, including a redacted copy of the Final Designation that MetLife is challenging in this Court.  Further disclosure of the confidential record materials is therefore unnecessary to vindicate the public's interest in judicial access.

I.      **Better Markets Does Not Meet The Criteria For Permissive Intervention.**

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion" to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Better Markets does not meet these requirements for permissive intervention.

A.      **Better Markets' Motion To Intervene Is Untimely And Could Cause Serious Delay And Prejudice.**

"Whether intervention be claimed of right or as permissive, . . . the application must be 'timely.'"  *NAACP v. New York*, 413 U.S. 345, 365 (1973); *see also* Fed. R. Civ. P. 24(b)(1)(B).

The timeliness of a motion to intervene is often examined in conjunction with whether the motion would cause "undu[e] delay or prejudice." Fed. R. Civ. P. 24(b)(3); *see also, e.g.*, *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014). Whether those two factors are considered separately or together, Better Markets' motion to intervene fails in both respects.

In assessing timeliness, courts consider, among other factors, the "point to which the suit has progressed" when the motion to intervene was filed. *NAACP*, 413 U.S. at 365-66. In *NAACP*, for example, the Supreme Court upheld a determination of untimeliness where the putative intervenors filed their motion three weeks after "they allegedly were first informed of the pendency of the action" and three months after the suit was filed. *Id.* at 367; *see also United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 831-33 (8th Cir. 2010) (motion to intervene was untimely when there was a six-month gap between the motion and when the putative intervenor "had knowledge of all the facts" giving rise to the intervention request); *Stewart v. Rubin*, 948 F. Supp. 1077, 1084, 1103-04 (D.D.C. 1996) (same, seven-month gap), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

Here, Better Markets received notice of the parties' intentions to maintain the confidentiality of materials submitted to FSOC when the agency filed its memorandum in support of its motion for summary judgment under seal on May 8, 2015. ECF No. 18-1. Counsel for Better Markets entered an appearance in the case on May 15, 2015, ECF Nos. 24, 25, and Better Markets filed an *amicus curiae* brief in support of FSOC on May 22, 2015, ECF No. 33-2. That brief defended what Better Markets described as FSOC's "exceedingly thorough" analysis in the Final Designation, which, in Better Markets' view, "followed the applicable procedural requirements; considered the appropriate factors; . . . and articulated the

8

basis for [FSOC's] decision in exhaustive detail." *Id.* at 13, 14.  Nowhere in its *amicus curiae*

brief did Better Markets suggest that its ability to formulate those views or defend FSOC's

decision had been hampered by redactions to FSOC's brief or a lack of access to the record.

Over the ensuing four months, the parties continued to file briefs and record materials

under seal.  *See, e.g.*, ECF No. 41 (MetLife's memorandum in support of its motion for summary

judgment filed under seal on June 16, 2015); ECF No. 69 (joint appendix filed under seal on

September 4, 2015).  Yet, it was not until November 19—more than six months after entering an

appearance and receiving notice of the parties' initial filings under seal—that Better Markets

moved to intervene.  ECF No. 89.  That inexcusable delay is sufficient grounds, standing alone,

to deny Better Markets' motion as untimely.

In addition, Better Markets' intervention at this late date could "unduly delay [and]

prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  As the D.C.

Circuit has explained, the timeliness requirement "is aimed primarily at preventing potential

intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties."

*Amador Cnty.*, 772 F.3d at 905; *see also Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014)

("disadvantage [to] existing parties" is "the most important consideration" in assessing

timeliness).  The D.C. Circuit has therefore affirmed denials of motions to intervene when

intervention would have "delay[ed] resolution of the merits to the detriment of the existing

parties, since the case was otherwise ready for a decision on the merits."  *Amador Cnty.*, 772

F.3d at 904 (internal quotation marks omitted); *see also, e.g.*, *United States v. British Am.*

*Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (affirming denial of

intervention because it would have prejudiced the parties by "delay[ing] and complicat[ing]" a

trial scheduled weeks later).

Better Markets' belated intervention in this case raises the potential for severe prejudice and delay because Better Markets' sole objective in seeking to intervene—requiring the parties to create, and the Court to rule upon, a line-by-line privilege log regarding hundreds of pages of documents—would divert the resources of the parties and the Court away from the upcoming oral argument to the onerous task of cataloguing and ruling upon each separate invocation of confidentiality.  If Better Markets had moved to intervene at an earlier stage in the proceedings, any confidentiality review ordered at Better Markets' request could have been undertaken while the parties were compiling the joint appendix, rather than in the weeks preceding oral argument. The possibility of severe "disrupt[ion]," "delay," and "complicat[ion]" on the eve of oral argument militates strongly in favor of denying intervention.  *Amador Cty.*, 772 F.3d at 905; *British Am. Tobacco*, 437 F.3d at 1238.

Better Markets' efforts to excuse its untimeliness are unpersuasive.  It contends, for example, that courts have permitted intervention "'to alter protective orders and obtain access to sealed documents *even after a case is over*.'"  Mot. 17 (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998) ("*Children's Ctr. II*")).  But, unlike Better Markets' attempt to intervene during the period immediately preceding a critical event in this case, intervention *after* a case is over generally will not "delay or prejudice the adjudication of the original parties' rights" because the parties' dispute has already been resolved.  Fed. R. Civ. P. 24(b)(3).

Better Markets also urges this Court to examine its intervention request in a vacuum without considering the "delay" and "prejudice" that could be occasioned by the resolution of its contingent application for an order to show cause.  According to Better Markets, the question "whether to grant the contingent application aimed at unsealing records is a separate inquiry

from the threshold decision to grant intervention."  Mot. 18 (citing *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 20 (D.D.C. 2010)).  But even in the case on which Better Markets relies, the court evaluated whether intervention by a journalist seeking to unseal the record would lead to "additional delay" attributable to "[r]eview of each piece of sealed evidence that [the putative intervenor] is interested in."  *Aristotle*, 714 F. Supp. 2d at 20.  While that court concluded that "[s]uch inconvenience d[id] not necessarily rise to the level of undue prejudice" on the particular facts of that case, *id.*, the circumstances here—a putative intervenor seeking to require the parties and the Court to address hundreds of confidentiality designations in the weeks immediately preceding oral argument—are far different and establish a clear and compelling risk of undue delay and prejudice.

> **B.    Better Markets Lacks A Claim Or Defense Sharing A Common Question Of Law Or Fact With This Case.**

Better Markets' motion to intervene should also be denied because Better Markets has failed to establish that it has "a claim or defense that shares . . . a common question of law or fact" with this litigation.  Fed. R. Civ. P. 24(b)(1)(B).

To intervene permissively, a third party ordinarily must identify "a claim or defense that has a question of law or fact in common with the main action" as well as "an independent ground for subject matter jurisdiction" over the claim that the would-be intervenor is seeking to litigate. *Children's Ctr. II*, 146 F.3d at 1046.  While the D.C. Circuit has recognized a "narrow exception" to the subject-matter jurisdiction requirement "when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order," it has never endorsed the proposition—urged by Better Markets here, Mot. 19-20—"that the commonality requirement is satisfied whenever a third party objects to a confidentiality order." *Children's Ctr. II*, 146 F.3d at 1047.

On the contrary, the D.C. Circuit has only upheld intervention by third parties seeking access to sealed records where the putative intervenor had a particularized interest in those records that was distinct from the generalized interest in judicial proceedings shared by all members of the public.  Thus, in *Children's Center II*, the D.C. Circuit reversed the denial of a motion to intervene because the would-be intervenor sought access to sealed materials that "might shed light on the substance of [her own] suit" where both cases involved the same defendant and similar allegations of sexual assault and harassment.  146 F.3d at 1048; *see also, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 300 F.R.D. 19, 22 (D.D.C. 2013) (permitting intervention by third parties whose "claims in the related litigation are very similar to the claims at issue in the present case").

Unlike MetLife—a party to this case and the direct object of the agency action under review, which moved to unseal record materials on which FSOC relied in its designation decision, *see* ECF No. 50; ECF No. 93 (granting motion)—Better Markets has no particularized interest in the sealed records that it seeks to access through its motion to intervene and contingent application for an order to show cause.  According to Better Markets, it is moving to intervene "as a member of the public" and as a "public interest organization" that is "seek[ing] to vindicate . . . its presumptive right of access to all of the filings in this action."  Mot. 2.  That "presumptive right of access to judicial records," Better Markets asserts, is "the *same* presumptive right . . . that *every* member of the public may invoke."  *Id.* at 3 (emphases added).  Under D.C. Circuit precedent, Better Markets' invocation of a generalized interest in public access is insufficient to establish "a claim or defense that shares . . . a common question of law or fact" with this litigation.  Fed. R. Civ. P. 24(b)(1)(B); *see also Children's Ctr. II*, 146 F.3d at 1047.

To be sure, there are appellate decisions from outside the D.C. Circuit holding that the issue "whether the record should be unsealed is itself a question of law in common with the main action." Mot. 19 (citing *Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994)). But those cases involved news organizations—rather than members of the general public—seeking access to sealed judicial records for journalistic purposes. *See Jessup*, 227 F.3d at 994; *Pansy*, 23 F.3d at 775. In any event, as Better Markets acknowledges, the D.C. Circuit has never "adopted th[e] principle" that the issue of confidentiality itself constitutes a "common question of law or fact" for purposes of permissive intervention. Mot. 19. If it had, any member of the public could intervene in any case in this Circuit where any material has been filed under seal. Such a free-for-all approach would eviscerate the prerequisites to intervention specified in Rule 24(b) and foster countless ancillary disputes in which members of the public with no discernible particularized interest in a case seek access to records that the parties and the court have made the reasonable determination to maintain under seal.

## II.    If Better Markets Is Granted Leave To Intervene, Its Application For An Order To Show Cause Should Be Denied.

Even if Better Markets is permitted to intervene in this case, its application for an order to show cause should still be denied because Betters Markets' request to unseal the record is incompatible with the confidentiality protections that Congress codified in the Dodd-Frank Act and does not meet the common-law criteria that the D.C. Circuit has established for unsealing confidential record materials. *See Hubbard*, 650 F.2d at 317-22.

### A.    Dodd-Frank's Confidentiality Provision Forecloses Better Markets' Request To Unseal The Record.

If this were a "typical case," this Court would examine Better Markets' application for an order to show cause under the well-settled six-factor framework that the D.C. Circuit uses to

evaluate requests to unseal the record.  *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001); *see also Hubbard*, 650 F.2d at 317-22.  This is not a "typical case," however, because Congress has already determined that the information Better Markets is seeking to unseal must remain confidential.

When a statute requires an agency to preserve the confidentiality of administrative materials, the statute supersedes the D.C. Circuit's standard multi-factor inquiry, *see Hubbard*, 650 F.2d at 317-22, and mandates that agency materials be sealed from the public during ensuing litigation (absent the consent of all parties).  Thus, in *Sealed Case*, the D.C. Circuit held that a provision of the Federal Election Campaign Act barred the Federal Elections Commission ("FEC") from publically filing a petition to enforce a third-party subpoena in connection with an investigation into potential campaign-finance violations.  237 F.3d at 666.  The D.C. Circuit concluded that the statute—which provided that "'[a]ny notification or investigation made under this section shall not be made public by the Commission'" without written consent, *id.* at 665 (quoting 2 U.S.C. § 437g(a)(12)(A) (since recodified at 52 U.S.C. § 30109(a)(12)(A)))—"plainly prohibit[ed]" the FEC from filing its petition publicly and eliminated the need for the court to undertake the typical six-factor confidentiality analysis.  *Id.* at 667.

The Dodd-Frank Act compels the same outcome here.  When Congress enacted Dodd-Frank, it mandated that FSOC "shall maintain the confidentiality of any data, information, and reports submitted under this subchapter."  12 U.S.C. § 5322(d)(5)(A).[1]  That provision encompasses material that companies being evaluated for designation as a nonbank SIFI submit to FSOC during the designation process, as well as information that third parties submit to the

---

[1]  Section 5322 is codified in Subchapter I of Chapter 53 of Title 12; Subchapter I encompasses all of the statutory provisions that expressly govern FSOC's operations and authority, including its authority to designate companies as nonbank SIFIs.  *See* 12 U.S.C. § 5323.

agency to assist its designation inquiry.  The broad and unequivocal language of Section 5322(d)(5)(A) categorically protects those materials from public disclosure without the need for line-by-line justifications or selective redactions.

Better Markets is seeking to unseal precisely the type of confidential "data, information, and reports" explicitly protected from disclosure by Section 5322(d)(5)(A).  Better Markets' application for an order to show cause requests that the parties provide additional justification for redactions to materials submitted to FSOC during the designation process, as well as for court filings in which the parties refer to this confidential information.  *See, e.g.*, JA 759-2327 (MetLife's submissions to FSOC during the designation process); ECF No. 84-1 (FSOC's public motion for summary judgment redacting references to confidential information).

Section 5322(d)(5)(A) is therefore dispositive here.  Because Better Markets is seeking "data, information, and reports" that MetLife and others submitted to FSOC during the designation process, and to court filings that rely on and cite to those confidential submissions, Section 5322(d)(5)(A) categorically bars Better Markets—which was not a party to the designation process—from accessing those confidential materials.  12 U.S.C. § 5322(d)(5)(A).[2]

Better Markets seeks to circumvent Section 5322(d)(5)(A) by contending that the statute applies only to "FSOC and its member agencies, not to a federal court."  Mot. 32.  Thus, according to Better Markets, Congress required MetLife to choose between exercising its right to judicial review of FSOC's designation determination, on the one hand, and maintaining the

---

[2]  In contrast, Section 5322(d)(5)(A) does not prohibit the disclosure of materials in the agency record to a nonbank SIFI seeking judicial review of FSOC's designation decision.  *See* ECF No. 93, at 2 (concluding in order granting motion to compel that Section 5322(d)(5)(A) did not prohibit disclosure of sealed materials to MetLife because FSOC's position "disregard[ed] the Administrative Procedure Act's presumptive guarantee of review based on the entire record" and would "frustrate the judicial review afforded by Dodd-Frank itself").

confidentiality of its highly sensitive commercial information, on the other.  But nothing in

Section 5322(d)(5)(A) suggests that MetLife somehow waived Dodd-Frank's confidentiality

protections—and freed FSOC from its obligation to adhere to those protections—when it

exercised its statutory right to seek judicial review of FSOC's designation decision.  *See* 12

U.S.C. § 5323(h) (establishing statutory right to judicial review).  Nor does Dodd-Frank indicate

that a privilege log or line-by-line redactions of materials submitted to FSOC are necessary once

a suit has been filed.

   The authority that Better Markets cites to support its attempted end-run around Section

5322(d)(5)(A) is not to the contrary.  *See* Mot. 33.  In *Union Oil Co. of California v. Leavell*, 220

F.3d 562 (7th Cir. 2000), the Seventh Circuit rejected the plaintiff's request to keep the

"*existence* of [a] case from public view" by sealing the entire case docket, including the briefs

and all other record materials, which the plaintiff argued was warranted because it had filed suit

to enforce the terms of a confidential settlement agreement allegedly violated by the defendant.

*Id.* at 567.  The Seventh Circuit reasoned that the mere act of "[c]alling a settlement confidential

does not make it a trade secret" that a court must keep under seal.  *Id.* at 567, 568; *see also*

*Huntsman-Christensen Corp. v. Entrada Indus., Inc.*, 639 F. Supp. 733, 738 (D. Utah 1986)

(denying the defendants' motion to seal a complaint because the "defendants ha[d] not overcome

the common law right and interest in public access").  While *Union Oil* makes clear that public

access to judicial proceedings generally cannot be obstructed by private agreements, it does not

disturb the equally well-settled principle that, where *Congress* has mandated the confidentiality

of agency proceedings, the parties and the court are required to adhere to that statutory guarantee

of confidentiality in litigation arising out of those proceedings.  *See Sealed Case*, 237 F.3d at

666.  Here, it is Congress's instructions in Section 5322(d)(5)(A)—not a privately negotiated

agreement between FSOC and MetLife—that mandates the confidentiality of the sealed record materials.

> **B.      Better Markets' Application For An Order To Show Cause Also Fails Under The Six-Factor *Hubbard* Framework.**

Even if this Court were to conclude that some, or all, of the sealed materials sought by Better Markets are not protected by Section 5322(d)(5)(A), it should still deny Better Markets' application for an order to show cause because, on the particular facts of Better Markets' motion, the traditional common-law factors weigh overwhelmingly in favor of maintaining the confidentiality of the sealed portions of the record.

Where there is no statute expressly mandating confidentiality, the D.C. Circuit applies the six-factor *Hubbard* framework to evaluate requests to unseal the record.  The factors considered as part of the *Hubbard* analysis are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("*Children's Ctr. I*") (citing *Hubbard*, 650 F.2d at 317-22).  While all six factors are relevant to the outcome, "a strong showing on one *Hubbard* factor can outweigh several other factors."  *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11 (D.D.C. 2013).  Here, the balance tips decisively in favor of maintaining the confidentiality of the sealed materials.

First, the need for public access to the sealed materials is weak because Better Markets has not identified any specific, individualized need for accessing those materials but has instead premised its request on the "presumptive right of access to judicial records that every member of the public may invoke."  Mot. 3.  That "abstract" interest in public access generally weighs less

strongly in favor of disclosure than "concrete, particularized" interests specific to the movant.
*United States ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008). Those
interests are especially compelling—and often require a different outcome—when it is a plaintiff
or defendant itself, rather than a would-be intervenor, that is seeking access to the record. *See id.*
at 172-73 (granting motion to unseal filed by a False Claims Act defendant that sought access to
sealed exhibits attached to the plaintiff's complaint); ECF No. 93 (granting MetLife's motion to
compel).

It is also relevant to the first *Hubbard* factor that Better Markets is seeking access to
redacted briefs and appendix materials submitted by the parties, not to orders or opinions
generated by the Court. The D.C. Circuit has made clear that the right of "[a]ccess to records" is
intended to "ensur[e] the integrity of judicial proceedings," *Hubbard*, 650 F.2d at 314, by
affording the public a means of "monitoring . . . judicial misconduct." *Washington Post v.
Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991). The presumption of public access is therefore
weaker where a movant is seeking to unseal "documents filed with the court or introduced into
evidence" rather than the "court's decrees, its judgments, [and] its orders, [which] are the
quintessential business of the public's institutions." *Children's Center I*, 98 F.3d at 1409. That
is the case here, where the sealed documents that Better Markets is seeking to access disclose the
proprietary commercial information of a private company, not the rulings or reasoning of a
public tribunal.

Moreover, even with respect to the briefs and agency record in this case, the public
already has an ample basis for evaluating the parties' arguments and the agency's decision-
making. The parties have filed 241 pages of briefs with redactions that comprise less than 1% of
the total text. *See* ECF No. 84-1 (redacting only six lines of FSOC's 61-page memorandum in

support of its motion for summary judgment); ECF No. 86-1 (redacting only 29 lines of

MetLife's 70-page memorandum in support of its motion for summary judgment).  In addition,

the parties have already produced a redacted public version of FSOC's Final Designation.  JA

341-727.  The parties provided the redacted Final Designation to their *amici* prior to the deadline

for the submission of *amicus curiae* briefs and also included it in the Joint Appendix, along with

hundreds of pages of additional record materials.  The public—and companies that may be under

consideration for designation in the future—therefore have far more information about FSOC's

Final Designation of MetLife than MetLife itself had about FSOC's prior designation decisions,

and the agency record in its own proceeding, when it was being evaluated by FSOC.  *See* ECF

No. 86-1, at 11 n.6, 63-67 (discussing MetLife's unsuccessful FOIA requests and requests for

access to the agency record).

Because Better Markets invokes only a generalized interest in disclosure, and the public

already has access to extensive briefing and agency record materials, the first *Hubbard* factor

weighs only weakly, if at all, in favor of unsealing the record.  *See Hubbard*, 650 F.2d at 317-18

(holding that the fact that the public already had access to the courtroom proceedings and the

principal filings and decisions undercut the need for access to other documents).[3]

All of the other *Hubbard* factors—which Better Markets largely ignores, *see* Mot. 25-

26—weigh strongly against Better Markets' application.  With respect to the second factor, it is

undisputed that the public has not previously had access to the sealed materials—which were

---

[3]  Better Markets emphasizes that MetLife and FSOC refiled the public versions of their briefs
after determining that some of the information that had initially been redacted could in fact be
made public.  *See* Mot. 30.  But far from "confirm[ing] that the Court should conduct an
independent review" of all redactions, *id.*, the parties' decision to refile with fewer redactions
underscores their commitment to produce a set of briefs and record materials that discloses as
much information as possible while still safeguarding MetLife's legitimate privacy interests and
adhering to the confidentiality guarantees mandated by Dodd-Frank and D.C. Circuit precedent.

submitted confidentially to FSOC during the designation process or refer to information

contained in those confidential submissions—and that this factor therefore militates against

unsealing the record.  *See Hubbard*, 650 F.2d at 318.  Likewise, as to the third factor, both

parties oppose Better Markets' application for an order to show cause, which again weighs

against disclosure.  *See Hamiduva v. Obama*, No. CV 08-1221(CKK), 2015 WL 5176085, at *3

(D.D.C. Sept. 3, 2015) ("[T]he Court finds that this factor weighs in favor of maintaining the seal

given that all parties in the instant action are in support of non-disclosure . . . .").

The application of the fourth and fifth *Hubbard* factors—the strength of MetLife's

property and privacy interests and the possibility of prejudice to MetLife—is substantially

informed by the Dodd-Frank Act's requirement that FSOC "maintain the confidentiality of any

data, information, and reports submitted" to it as part of the designation process.  12 U.S.C.

§ 5322(d)(5)(A); *see also Upshaw v. United States*, 754 F. Supp. 2d 24, 29 (D.D.C. 2010)

(noting the interrelationship between the fourth and fifth *Hubbard* factors).  Even if that statutory

provision does not categorically foreclose Better Markets' application for an order to show

cause, Section 5322(d)(5)(A) evinces "an extraordinarily strong privacy interest in keeping the

records sealed" that, like the analogous provision of FECA at issue in *Sealed Case*, outweighs

any contrary considerations.  237 F.3d at 666; *see also id.* (explaining that the privacy interest

created by FECA's confidentiality provision was "[s]o strong . . . that only rarely, if ever, might

the remaining five *Hubbard* factors counterbalance the 'strength of [the] . . . privacy interests

asserted'") (quoting *Hubbard*, 650 F.2d at 320) (second alteration and ellipsis in original).

As reflected in the protections of Section 5322(d)(5)(A), MetLife's property and privacy

interests in maintaining the confidentiality of its proprietary business information are plainly

compelling.  *See Hubbard*, 650 F.2d at 320.  The materials that MetLife submitted to FSOC

during the designation process, as well as the other nonpublic materials submitted to the agency, are highly sensitive and cover virtually every aspect of MetLife's operations, business model, and balance sheet.  If that information were disclosed publicly, MetLife's competitors would be free to exploit their knowledge of MetLife's most closely guarded proprietary information to upend the competitive playing field and enhance their strategic position.  The long-term financial and reputational harm to MetLife would be incalculable.  That is precisely the reason that Congress included the confidentiality guarantees in Section 5322(d)(5)(A), that FSOC promulgated parallel protections in its rules and implementing regulations, *see* 12 C.F.R. § 1310.20(e)(1); FSOC Rules of Organization § XXX.10, and that, more broadly, FOIA has long included an exception for "trade secrets and commercial or financial information," 5 U.S.C. § 552(b)(4).  Indeed, courts have consistently "refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and have recognized the "protect[ion] of trade secrets" as one of the "time-honored exceptions" to the right of public access, *Hubbard*, 650 F.2d at 315.  Better Markets identifies no basis for this Court to disregard these settled confidentiality protections.

Finally, the sixth *Hubbard* factor—the purpose for which the documents were provided to the Court—also weighs against disclosure.  The confidential agency record materials, and the briefs citing those confidential materials, were filed with the Court as part of MetLife's statutorily authorized challenge to FSOC's decision to designate the company as a nonbank SIFI. *See* 12 U.S.C. § 5323(h).  Preserving the confidentiality of those materials is consistent with that purpose—and with Congress's decision to authorize judicial review of FSOC's designation decisions—because unsealing the materials would punish MetLife for invoking its statutory right

to judicial review and deter other companies from invoking that right in response to future designation decisions. *See Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 10-11 (evaluating the sixth *Hubbard* factor by determining whether disclosure would be consistent with statutory objectives).  That result would undermine the congressional objectives animating Dodd-Frank and impose an unwarranted burden on MetLife's statutorily authorized right to challenge FSOC's designation decision in this Court.  *Cf. Hubbard*, 650 F.2d at 321 (commenting, in applying the sixth factor, that "it would be ironic indeed if one who contests the lawfulness of a search and seizure were always required to acquiesce in a substantial invasion of those interests simply to vindicate them").

The *Hubbard* factors therefore weigh resoundingly in favor of maintaining the confidentiality of the sealed materials.  Better Markets' invocation of a generalized public interest in judicial access is not nearly sufficient to justify disclosure of that highly sensitive, commercially valuable information, which has always been nonpublic, was submitted to FSOC pursuant to a statutory guarantee of confidentiality, and was filed with this Court as part of MetLife's statutorily authorized challenge to FSOC's designation decision.  Better Markets' application for an order to show cause should be denied in full.

## CONCLUSION

For the foregoing reasons, this Court should deny Better Markets' motion to intervene.  If intervention is nevertheless granted, the Court should deny Better Markets' application for an order to show cause why the record should not be unsealed.

Respectfully submitted,

Dated: December 15, 2015

/s/ Eugene Scalia
Eugene Scalia (D.C. Bar No. 447524)
   *Counsel of Record*
EScalia@gibsondunn.com
Amir C. Tayrani (D.C. Bar No. 490994)

Indraneel Sur (D.C. Bar No. 978017)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

Ashley S. Boizelle (D.C. Bar No. 1010322)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Plaintiff MetLife, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2015, I caused the foregoing

Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Better Markets'

Motion to Intervene and Contingent Application for an Order to Show Cause Why the Record

Should Not Be Unsealed to be filed via the Court's CM/ECF system.  I further certify that

service was accomplished on all parties via the Court's CM/ECF system.


*/s/ Eugene Scalia*
Eugene Scalia