UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| METLIFE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0045 (RMC) |
| | ) | |
| FINANCIAL STABILITY OVERSIGHT COUNCIL, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION**

Better Markets, Inc. filed a motion to intervene and a contingent application for an order to show cause why the record in this case should not be entirely unsealed. The underlying lawsuit was brought by MetLife to challenge to its designation by the Financial Security Oversight Council (FSOC) as a nonbank systemically important financial institution under the Dodd-Frank Act. That challenge was sustained and the designation rescinded. Yet as Better Markets points out, much of the substantive record concerning FSOC's Final Determination, and MetLife's opposition to it, remains sealed or redacted from the public record.

The motion to intervene by permission will be granted and the application for an order to show cause will be denied. The motion assumes that this Court has not reviewed the record in this case or the extensive briefs filed in it, and that the Court instead has allowed the parties alone to determine what should be redacted. That assumption is in error. Just as importantly, the law protects MetLife's submissions to FSOC and FSOC's discussion of them. Finally, the need to unseal the record is lessened because the Court's prior Opinion and Order contain no redactions and can be fully understood.

1

## I.  FACTS

On December 18, 2014, FSOC voted 9-1 to designate MetLife under Section 113 of the Dodd-Frank Act, 12 U.S.C. § 5323.  On the same day, FSOC issued its *Explanation of the Basis of Final Determination* (Final Determination).  FSOC concluded that "material financial distress" at MetLife "could pose a threat to the financial stability of the United States."  *See* 12 U.S.C. § 5323(a)(1).

A public version of FSOC's Final Determination has been available since the day it was issued.  *See* https://www.treasury.gov/initiatives/fsoc/designations/Pages/default.aspx.  That 30-page analysis lays bare each of FSOC's conclusions vis-à-vis MetLife and its potential to threaten the financial stability of the United States.  An appendix summarizes MetLife's Consolidated Balance Sheet.  *See id.*

### A.  Procedural History

On January 13, 2015, MetLife filed suit in this Court seeking rescission of FSOC's Final Determination.  *See* Compl. [Dkt. 1].  The parties filed cross motions for summary judgment.  On August 24, 2015, MetLife filed an unopposed motion to file unredacted final briefs under seal.  *See* Mot. [Dkt. 67].  The motion was granted by Minute Order, and MetLife filed its final briefs under seal on September 18, 2015.  *See* Mem. [Dkt. 72-1]; Reply [Dkt. 73-1].  MetLife also moved to file the Joint Appendix under seal.  *See* Mot. [Dkt. 68].  That motion was granted by Minute Order, and the Joint Appendix was filed under Seal on September 4, 2016.  *See* Joint. App'x [Dkt. 69].

On September 30, 2015, the parties again filed publicly their final, redacted briefs.  The parties had conferred and decided that even more information could be released publicly.  *See* Notice of Filing [Dkt. 84] at 1.  These were the briefs relied on by the Court.  *See* Op. [Dkt.

105] at 2 (citing Def. Mot. for Summ. J. [Dkt. 84-1] (FSOC Mot.); Pl. Opp'n & Mot. for Summ. J. [Dkt. 86-1] (MetLife Mot.); Def. Opp'n & Reply [Dkt. 84-2] (FSOC Reply); and Pl. Reply [Dkt. 86-2] (MetLife Reply)).

On November 19, 2015, Better Markets moved to intervene in this case. *See* Mot. [Dkt. 89]. Better Markets sought permissive intervention under Fed. R. Civ. P. 24(b) "for the limited purpose of seeking to unseal the record in this case." *Id.* at 1. After a brief extension of time, MetLife and FSOC filed their opposition and response, respectively, to Better Markets' motion. *See* Opp'n [Dkt. 95] (Opp'n); Resp. [Dkt. 96] (Resp.). Better Markets filed a reply. *See* [Dkt. 98] (Reply).

On December 8, 2015, the Court granted a Motion to Compel [Dkt. 50] by MetLife. *See* Order [Dkt. 93]. The Court ordered 32 additional documents to be turned over and directed the parties to propose a supplemental briefing schedule. Pursuant to that schedule, MetLife filed under seal a supplemental brief on January 5, 2016 [Dkt. 97] and FSOC filed an opposition on January 26, 2016 [Dkt. 99]. MetLife filed publicly a redacted version of its Supplemental Memorandum on February 5, 2016 [Dkt. 103], as did FSOC [Dkt. 102]. Neither brief was relied on—explicitly or implicitly—in the Court's ultimate disposition of this case. *See generally* Op. [Dkt. 105].

On January 27, 2016, MetLife (of its own volition) suggested that "some of the information that had been redacted from the public versions of its briefs and the joint appendix can now be made public without compromising the Company's proprietary commercial or financial information." Notice of Filing [Dkt. 100] at 1. MetLife filed new, less-redacted versions its final Motion for Summary Judgment [Dkt. 100-1]; its final Reply [Dkt. 100-2];

Volume 5 of the Joint Appendix [Dkt. 100-3];[1] and Volume 13 of the Joint Appendix [Dkt. 100-4]. To appreciate how minimally redacted these filings are, consider that MetLife's final Motion had only two redactions in 71 pages of facts and argument. *See* Mot. [Dkt. 100-1] at 29, 64-65. FSOC's final Motion contained two redactions in 62 pages. *See* Mot. [Dkt. 84-1] at 47, 51 n.35. In short, the parties' filings are almost entirely open to the public.

On February 10, 2016, the Court held a hearing on the parties' cross motions for summary judgment. The hearing was open to the public—complete with a live video feed into a second courtroom so that even more people could attend—and the Transcript of Proceedings [Dkt. 108] is available to the public.

On March 30, 2016, the Court entered an Opinion [Dkt. 105] under seal and an Order [Dkt. 106] granting in part MetLife's motion for summary judgment and denying FSOC's motion for summary judgment. The Court gave the parties one week to suggest any redactions to the Court's Opinion. Both parties agreed that the Opinion should be unsealed entirely. *See* Notice [Dkt. 109]. The Court agreed and entered a Minute Order accordingly. The Opinion, containing every basis upon which the Court ruled in this case, is open to public viewing.

**B. The Instant Motion and Application**

Notwithstanding the foregoing, Better Markets moves to intervene and apply for an order to show cause why the record in this case should not be unsealed.[2] Specifically, Better Markets would have this Court order:

---

[1] MetLife inadvertently redacted several lines that were not originally redacted, and filed a revised version on February 4, 2016 [Dkt. 101].

[2] Better Markets' motion was not mooted by this Court's disposition of the case on the merits or by FSOC's subsequent appeal. *See FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 648 (8th Cir. 2014) ("'[T]he right of access to judicial records and documents is independent of the disposition of the merits of the case.' Thus, the district court was permitted to consider whether to unseal the record despite [appellant's] filing of a notice of appeal in this case challenging the

> [T]hat counsel for the Plaintiff and the Defendant each shall . . . complete a review of every document within the Joint Appendix and briefing that has been redacted in whole or in part and determine whether any portions thereof may be unredacted, and shall file new versions on the public docket[.]

Mot., Ex. A, Proposed Order [Dkt. 89-2 at 45].[3]  As to any document that the parties wish to remain sealed, they would have to present the Court with a redaction log stating the justification for sealing and the basis for believing that their interest outweighs the public's interest in accessing the record.  *See id.*

The parties reacted differently to Better Markets' motion.  FSOC took no position as to intervention, but opposed the application for a show-cause order.  According to FSOC, "The briefs and record materials that have been placed on the public docket are more than sufficient to inform the public of the basis for the Council's decision to designate MetLife, Inc." Resp. at 1; *see also id.* at 1-2 ("While Better Markets complains about the number of pages of the Joint Appendix that have been withheld or redacted from the public docket, the key record materials relied upon by the parties in support of their arguments are available on the public docket.").  FSOC also argued that Better Markets' request was "inconsistent with Section 112 of the Dodd-Frank Act, which provides that the Council 'shall maintain the confidentiality of any data, information, and reports submitted' by a nonbank financial company." *Id.* at 2 (quoting 12 U.S.C. § 5322(d)(5)(A)).  That MetLife sought judicial review does not, according to FSOC,

---

grant of summary judgment to [appellee], which was a final and appealable decision.") (quoting *Stone v. Univ. of Md. Medical Sys. Corp.*, 855 F.2d 178, 180 n.* (4th Cir. 1988) (citation omitted)).

[3] After the Court entered its March 30, 2016 Opinion, Better Markets filed an Amended Contingent Application.  *See* Am. App. [Dkt. 107].  Better Markets added the Court's Opinion to the documents already sought to be reviewed ("the Joint Appendix and briefing that has been redacted in whole or in part . . .") in the event that any of the Opinion remained under seal.  Because the Opinion was unsealed entirely, the Amended Application is moot.

"result in any change in the confidential treatment of the designated company's submissions." Resp. at 2. FSOC warned of "a chilling effect on companies' willingness to provide the Council with the information necessary to enable the Council to reach an informed judgment, as well as companies' willingness to seek judicial review." *Id.*

MetLife opposed both intervention and application. It argued that Better Markets' motion is untimely under Fed. R. Civ. P. 24(b) and that Better Markets lacks "a claim or defense that shares . . . a common question of law or fact" with MetLife's suit, because the intervention request is premised on a generalized right of access to judicial records that is no different from the interest shared by every other member of the public. Opp'n at 6 (quoting Fed. R. Civ. P. 24(b)(1)(B) (citation and quotation marks omitted)). On the merits of Better Markets' application, MetLife joined FSOC in arguing that Dodd-Frank protects the confidentiality of materials submitted during FSOC's designation process. Opp'n at 6 (citing 12 U.S.C. § 5322(d)(5)).

The motion and application are ripe for resolution.

## II.  LEGAL STANDARD

Permissive intervention is governed by Rule 24(b) of the Federal Rules of Civil Procedure. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Id.* R. 24(b)(1)(B). "In exercising its discretion" to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* R. 24(b)(3).

Better Markets expressly premises its contingent application on the so-called "common law right of access." Mot. at 21 n.10 (acknowledging "that the D.C. Circuit has

expressed doubts about whether the First Amendment right of access applies outside of the criminal context") (citing *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 5 (D.C. Cir. 2013); *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 935 (D.C. Cir. 2003)). The common-law right is premised on the notion that all members of the public have a presumptive right of access to judicial records. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978); *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (*Children's Ctr. I*) (recognizing the "strong presumption in favor of public access to judicial proceedings") (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)).

Ordinarily courts apply a six-factor framework to decide whether the public right is overcome by private interest, weighing: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *See United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). For the reasons stated below, the Court does not reach that framework in this case.

### III.  ANALYSIS

The Court will grant Better Markets' motion to intervene by permission but will deny its application for an order to show cause.

#### A. Motion to Intervene

MetLife first argued that Better Markets was too late, and that it should have filed its motion in May 2015 when it first became aware that materials were being filed under seal. Opp'n at 8. Waiting more than six months was, per MetLife, an "inexcusable delay." *Id.* at 9.

But the crux of MetLife's argument was that Better Markets' untimely intervention could "unduly delay [and] prejudice the adjudication of the original parties' rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3) (alteration in original)). MetLife asked not to be diverted from the task then at hand: "the upcoming oral argument." Opp'n at 10.

Those concerns have since been alleviated. Oral argument has passed and the dispositive motions have been ruled upon. Intervention by Better Markets no longer threatens the parties' or the Court's ability to adjudicate this case. As the D.C. Circuit has explained, the timeliness requirement "is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014); *see also Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) ("disadvantage [to] existing parties" is "the most important consideration" in assessing timeliness). The D.C. Circuit has thus affirmed denials of motions to intervene when intervention would have "delay[ed] resolution of the merits to the detriment of the existing parties, since the case was otherwise ready for a decision on the merits." *Amador Cnty.*, 772 F.3d at 904 (internal quotation marks omitted); *see also, e.g.*, *United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (affirming denial of intervention because it would have prejudiced the parties by "delay[ing] and complicat[ing]" a trial scheduled weeks later). In this case, the dust has settled. Better Markets' intervention will not disrupt or delay anyone.

MetLife argues second that Better Markets has no "claim or defense that shares . . . a common question of law or fact" with this litigation. Opp'n at 11 (quoting Fed. R. Civ. P. 24(b)(1)(B)). Better Markets asserts an interest in this case as "a member of the public" seeking to enforce the "public's right of access to judicial records." Mot. at 21, 20. The D.C. Circuit

has recognized a "narrow exception" to the requirement that a federal court have subject-matter jurisdiction over a putative intervenor's claim "when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidential order." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (*Children's Ctr. II*). MetLife is right that this "exception" is generally confined to intervenors who have "a particularized interest in those records that was distinct from the generalized interest in judicial proceedings shared by all members of the public." Opp'n at 12.

Better Markets meets that standard here. As MetLife acknowledges, courts have allowed intervention by news organizations seeking to unseal judicial records for journalistic purposes. Opp'n at 13 (citing *Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994)). In this case, Better Markets is a nonprofit organization that "engages in extensive . . . public education," including through "mainstream and social media channels to promote public awareness about financial reform." Mot. at 3. These interests align with those of journalists who have been allowed to intervene.

Better Markets is also a seasoned advocate, participating in "regulatory commentary and significant court cases involving financial regulation and enforcement." *Id.* In this regard, Better Markets is not unlike the intervenor in *Children's Center II*, whose intervention "might shed light on the substance of [her own] suit." Opp'n at 12 (quoting *Children's Cntr. II*, 146 F.3d at 1048 (alterations in original)). No doubt Better Markets seeks to use what it learns from this case in other cases or administrative litigation.

The Court grants permissive intervention cautiously and only because the motion does not concern the merits of the underlying case (as to which Better Markets has no standing).

In these circumstances, given Better Markets' purposes and the intense publicity following the Court's Opinion, its discretion leads this Court to grant intervention.

### B. Application for Order to Show Cause

The issue of Better Markets' intervention aside, its application for an order to show cause will be denied. Congress has determined that the information Better Markets is seeking to unseal must remain confidential and this Court, after review, agrees with the parties that the congressional direction and court precedent support the redactions that have been made.

When a statute requires an agency to preserve the confidentiality of administrative materials, the statute supersedes the multi-factor inquiry prescribed by the D.C. Circuit in *Hubbard* and relied on by Better Markets. *See In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001); *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). Thus, in *Sealed Case*, the D.C. Circuit held that a provision of the Federal Election Campaign Act, 2 U.S.C. § 431 *et seq.*, barred the Federal Elections Commission (FEC) from publicly filing a petition to enforce a third-party subpoena in connection with an investigation into potential campaign-finance violations. 237 F.3d at 666. The D.C. Circuit concluded that the statute—which provided that "[a]ny notification or investigation made under this section shall not be made public by the Commission" without written consent, *id.* at 665—"plainly prohibit[ed]" FEC from filing its petition publically and eliminated the need for a *Hubbard* analysis. *Id.* at 667.

Dodd-Frank has a similar mandate: it requires that FSOC "maintain the confidentiality of *any* data, information, and reports submitted under this subchapter." 12 U.S.C. § 5322(d)(5)(A) (emphasis added). When challenged by MetLife, FSOC defended in part by filing the complete Final Determination under seal but filing a redacted version on the public docket. Similarly, both parties filed full versions of their briefs under seal and filed partially-

redacted versions on the public docket.  FSOC agrees with MetLife that the records sought by Better Markets are protected by congressional cover.  *See* Resp. at 2 (arguing that Better Markets' request was "inconsistent with Section 112 of the Dodd-Frank Act, which provides that the Council 'shall maintain the confidentiality of any data, information, and reports submitted' by a nonbank financial company") (quoting 12 U.S.C. § 5322(d)(5)(A)); *accord* Opp'n at 6.

Better Markets contends that Section 5322(d)(5)(A) applies only to "FSOC and its member agencies, not to a federal court."  Mot. at 32.  *In re Sealed Case* suggests otherwise.  Having been specifically directed by Congress to maintain confidentiality of "any" information it received, FEC was not free to ignore that direction merely because it sought to enforce its subpoena in court.  Instead, there was "a strong presumption that, even if the FEC possesses the power to file subpoena enforcement actions on the public record, such actions should be sealed."  *In re Sealed Case*, 237 F.3d at 667.

Section 5322(d)(5) must also be read in harmony with Section 5323(h), which provides a right to judicial review.  It is unthinkable that Congress would condition the confidential treatment of a company's information on that company's refraining from seeking judicial review expressly afforded to it by the same statute.  Nothing in Dodd-Frank suggests that a company waives confidentiality by going to court.  FSOC agrees.  *See* Resp. at 2 ("The statute does not, however, indicate that such litigation will result in any change in the confidential treatment of the designated company's submissions to the Council.").

Better Markets also complains that FSOC and MetLife jointly decided what should be redacted without an independent evaluation by the Court.  To the contrary, this Court has reviewed the record and all of the briefs.  The Court concurs in the parties' judgment and finds that large parts of the administrative record and the briefs should be redacted from public

view.  The parties sought authority to file under seal and the Court granted it, although it also required the parties to filed appropriately redacted copies, which they did.  Since then, the parties have been entirely forthcoming, even volunteering to lift redactions previously made.

Indeed, there would be little left to unseal.  Better Markets, even if successful on its application, could only claim a right to access "judicial records."  Notably, "not all documents filed with courts are judicial records." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). "[W]hether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* (quoting *United States v. El-Sayegh*, 131 F. 3d 158, 163 (D.C. Cir. 1997) (concluding that certain reports were not judicial records where the court made no decisions about them or otherwise relied on them)).  "A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions." *Children's Ctr. I*, 98 F.3d at 1409.  FSOC has argued that "a determination of which portions of the Joint Appendix constitute 'judicial records' w[ould] depend upon what materials the Court relies upon in its opinion ruling on the parties' dispositive motions."  Resp. at 6.

The portions of the Joint Appendix that were relied on by the parties are discussed extensively and, at times, recited verbatim in their briefs.  Those briefs are almost entirely unsealed.  More importantly, this Court's Opinion—"the quintessential business of the public's institution[]," *Children's Ctr. I*, 98 F.3d at 1409—is entirely unsealed.  The Court's Opinion quotes extensively from those portions of FSOC's Final Determination on which the Opinion relies.  Neither party objected to unsealing any of those portions.  In sum, the public is not left to guess at this Court's decisionmaking.

The right of "[a]ccess to records" is intended to "ensur[e] the integrity of judicial proceedings," *Hubbard*, 650 F.2d at 314, 315, by affording the public a means of "monitoring . .

. judicial misconduct." *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991). As its public Opinion makes clear, this Court relied on precedent from the Supreme Court to find FSOC's Final Determination arbitrary and capricious as a matter of administrative law. No basis for the Court's decision remains hidden from view. To the contrary, its analysis is available for the public to consider and debate (as it has). Better Markets may do the same.

## IV.  CONCLUSION

Better Markets' Motion to Intervene [Dkt. 89] will be granted by permission. Better Market's application for an order to show cause will be denied.

A memorializing Order accompanies this Opinion.

Date: May 25, 2016                                /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge