IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METLIFE, INC.,<br><br>                     Plaintiff,<br>        v.<br><br>FINANCIAL STABILITY OVERSIGHT<br>COUNCIL,<br><br>                     Defendant. | Civil Action No. 1:15-cv-45 (RMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO BETTER MARKETS' APPLICATION FOR AN ORDER TO
<u>SHOW CAUSE WHY THE RECORD SHOULD NOT BE UNSEALED</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 9

    I.     The *Hubbard* Factors Weigh Conclusively Against Unsealing............................ 10

        A.     The Need For Public Access To The Sealed Materials Is Minimal.......... 10

        B.     The Public Has Not Previously Had Access To The Sealed
               Materials ...................................................................................... 13

        C.     Both The Plaintiff And The Defendant Object To Disclosure ................. 15

        D.     MetLife's Property And Privacy Interests In The Sealed Materials
               Are Extraordinarily Strong, And Both MetLife And FSOC Would
               Be Severely Prejudiced By Disclosure ...................................................... 17

        E.     Unsealing Would Be Inconsistent With The Purpose For Which
               The Sealed Materials Were Introduced...................................................... 24

    II.     The *Hubbard* Factors Can Be Applied Without The Page-By-Page Inquiry
       That Better Markets Requests............................................................................... 25

CONCLUSION....................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Prof'l Agency, Inc. v. NASW Assurance Servs., Inc.*,
  121 F. Supp. 3d 21 (D.D.C. 2013) ............................................................22

*Apple Inc. v. Samsung Elecs. Co.*,
  727 F.3d 1214 (Fed. Cir. 2013)..........................................................18, 22

*Baxter Int'l, Inc. v. Abbott Labs.*,
  297 F.3d 544 (7th Cir. 2002) ....................................................................22

*EEOC v. Nat'l Children's Ctr., Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) ...............................................10, 11, 14, 15, 16

*In re Fort Totten Metrorail Cases*,
  960 F. Supp. 2d 2 (D.D.C. 2013) ..............................................10, 14, 15, 16, 26, 27

*Fudali v. Pivotal Corp.*,
  623 F. Supp. 2d 25 (D.D.C. 2009) ............................................................26

*MetLife, Inc. v. FSOC*,
  865 F.3d 661 (D.C. Cir. 2017) ...............................2, 7, 8, 9, 15, 17, 18, 21, 22, 24, 25, 26

*MetLife, Inc. v. FSOC*,
  No. CV 15-0045 (RMC), 2016 WL 3024015 (D.D.C. May 25, 2016)...............7, 8, 11, 12, 26

*Metlife, Inc. v. FSOC*,
  177 F. Supp. 3d 219 (D.D.C. 2016) ................................................................6, 20

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)................................................................................17, 22

*Pepsico, Inc. v. Redmond*,
  46 F.3d 29 (7th Cir. 1995) ....................................................................24

*United States ex rel. Schweizer v. Oce, N.V.*,
  577 F. Supp. 2d 169 (D.D.C. 2008).............................................................11

*In re Sealed Case*,
  237 F.3d 657 (D.C. Cir. 2001) ................................................................8, 17

*Suture Express, Inc. v. Owens & Minor Distribution, Inc.*,
  851 F.3d 1029 (10th Cir. 2017) ...............................................................18

*United States v. Harris,*
  204 F. Supp. 3d 10 (D.D.C. 2016) ........................................................................15

*United States v. Hubbard,*
  650 F.2d 293 (D.C. Cir. 1980) ....................................................2, 8, 10, 11, 13, 14, 17, 24, 26

*United States v. ISS Marine Servs., Inc.,*
  905 F. Supp. 2d 121 (D.D.C. 2012) ........................................................................26

*United States v. Thompson,*
  199 F. Supp. 3d 3 (D.D.C. 2016) ........................................................................15

*Upshaw v. United States,*
  754 F. Supp. 2d 24 (D.D.C. 2010) ........................................................................17

*Washington Post v. Robinson,*
  935 F.2d 282 (D.C. Cir. 1991) ........................................................................11

**Statutes**

5 U.S.C. § 552(b)(4) ........................................................................3, 21

12 U.S.C. § 5322(d)(3) ........................................................................1, 21

12 U.S.C. § 5322(d)(5) ........................................................1, 2, 3, 4, 7, 16, 17, 21

12 U.S.C. § 5323(a)(1)........................................................................1

12 U.S.C. § 5323(h) ........................................................................1, 4, 24

**Rules and Regulations**

12 C.F.R. § 1301.10........................................................................3

12 C.F.R. § 1310.20........................................................................3, 4, 21

FSOC Rules of Organization § XXX.10........................................................................3, 21

**Other Authorities**

Press Release, MetLife Announces Plan to Pursue Separation of U.S. Retail
  Business (Jan. 12, 2016) ........................................................................14, 23

Restatement (First) of Torts § 757 ........................................................................22

## INTRODUCTION

When Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), it gave the Financial Stability Oversight Council ("FSOC") the authority to require nonbank financial companies to submit their confidential financial information to the agency.  12 U.S.C. § 5322(d)(3)(A).  FSOC uses that confidential information to determine whether the company should be designated for supervision by the Board of Governors of the Federal Reserve System as a nonbank systemically important financial institution.  *Id.* § 5323(a)(1).  In order to safeguard companies' proprietary commercial information and encourage cooperation with FSOC's information requests, Congress provided that FSOC "shall maintain the confidentiality of any data, information, and reports" submitted to the agency as part of its designation inquiry.  *Id.* § 5322(d)(5)(A).

The Dodd-Frank Act also provides nonbank systemically important financial institutions with the right to seek judicial review of their designations.  12 U.S.C. § 5323(h).  MetLife, Inc. availed itself of that right after it was designated by FSOC in December 2014.  During the ensuing litigation, MetLife and FSOC have engaged in a series of good-faith negotiations in which they have sought to strike an appropriate balance between the protection of the confidential information submitted to FSOC by MetLife and its state regulators, on the one hand, and the public interest in this litigation, on the other.  As a result of those negotiations, the parties jointly sought leave to file minimally redacted briefs—with redactions totaling less than 1% of the text—as well as a redacted version of the joint appendix that publicly disclosed large portions of FSOC's Final Designation of MetLife and the record materials on which the agency relied, while maintaining the confidentiality of the proprietary commercial information that MetLife submitted to the agency and the sensitive submissions from state regulators.  And when MetLife later determined that, due to the passage of time, additional material in its briefs and the joint appendix

could be made public, it repeatedly filed new versions of those submissions with even fewer re-dactions.

Better Markets, Inc. intervened in this litigation for the purpose of gaining access to the sealed portions of the record.  But the factors that this Court applies to evaluate unsealing re-quests under *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980), weigh decisively against disclosure in light of the strength of MetLife's privacy interests, the limited public inter-est in disclosure of MetLife's proprietary information, and the protections afforded by Dodd-Frank's confidentiality provision, which "represent[s] a congressional judgment about the im-portance of maintaining the confidentiality of nonpublic information submitted to FSOC" that "should weigh heavily in [this Court's] analysis." *MetLife, Inc. v. FSOC*, 865 F.3d 661, 675 (D.C. Cir. 2017) ("*MetLife III*").  Because the *Hubbard* factors militate overwhelmingly against disclosure of the confidential material in the record, this Court should deny Better Markets' ap-plication for an order to show cause.

## BACKGROUND

The Dodd-Frank Act establishes substantive standards and procedural requirements that FSOC must follow when evaluating whether to designate a company a nonbank systemically im-portant financial institution.  Because of the sensitive nature of the agency's designation in-quiry—which includes an in-depth examination of a company's operations and finances—the Dodd-Frank Act requires that FSOC "maintain the confidentiality of any data, information, and reports submitted" to it as part of the designation process.  12 U.S.C. § 5322(d)(5)(A).  This con-fidentiality protection applies whether the material was submitted to FSOC voluntarily or under compulsion.  *Id.*  The Act further makes clear that "[t]he submission of any nonpublicly available data or information" as part of the designation inquiry "shall not constitute a waiver of, or other-wise affect, any privilege arising under Federal or State law (including the rules of any Federal

or State court) to which the data or information is otherwise subject." *Id.* § 5322(d)(5)(B).  In addition, FSOC has promulgated rules and regulations that effectuate its obligation under Dodd-Frank to maintain the confidentiality of materials submitted to the agency during a designation inquiry.  *See* 12 C.F.R. § 1310.20(e)(1) ("The Council shall maintain the confidentiality of any data, information, and reports submitted under this part."); FSOC Rules of Organization § XXX.10 (same).

FSOC notified MetLife that it was under consideration for designation as a nonbank systemically important financial institution in July 2013.  During the following eighteen-month period, MetLife submitted hundreds of pages of nonpublic material to the agency regarding its business model and balance sheet to support its position that the Company does not meet the criteria for designation.  JA 759-2327.  With respect to each of those submissions, MetLife expressly invoked the confidentiality protections of the Freedom of Information Act ("FOIA") and FSOC's own rules and regulations.  In particular, MetLife invoked the FOIA exception for "trade secrets and commercial or financial information," 5 U.S.C. § 552(b)(4); *see also* 12 C.F.R. § 1301.10(c), as well as FSOC's regulatory guarantees of confidentiality.  *See, e.g.*, JA 804 ("MetLife hereby requests confidential treatment for this Voluntary Submission . . . .") (citing 5 U.S.C. § 552(b)(4), 12 C.F.R. § 1301.10(c), 12 C.F.R. § 1310.20, FSOC Rules of Organization § XXX.10).  During the designation process, FSOC also solicited confidential information about MetLife from the Company's state regulators, which submitted information to FSOC pursuant to the agency's commitment to keep the materials nonpublic.  *See* JA 2869-908.

The designation process culminated in FSOC's decision to designate MetLife a nonbank systemically important financial institution in a Final Designation issued by the agency in December 2014.  JA 342.  FSOC prepared a public version of its Final Designation—which did not

include any of MetLife's confidential commercial information, JA 728-58—as well as a more extensive version that was "not contemplated for public release." JA 342 (citing 12 U.S.C. § 5322(d)(5), 12 C.F.R. § 1310.20(e)). It is FSOC's practice not to disseminate the nonpublic versions of its final designations—not even to other companies that are under consideration for designation and that expressly request access to the agency's precedents. *See, e.g.*, Letter from Ryan Law to Nikesh Jindal (Feb. 19, 2014) (denying MetLife's FOIA request for the final decision designating Prudential Financial, Inc.).

MetLife invoked its statutory right to challenge FSOC's designation decision by filing suit in this Court. 12 U.S.C. § 5323(h). During the summary-judgment briefing, the parties worked together to formulate a proposed approach to redactions that would preserve the confidentiality of MetLife's proprietary business information and the other nonpublic material submitted to FSOC while affording the public meaningful access to the agency record and the parties' briefs. To that end, the parties sought leave to file sealed versions of each of their briefs as well as public versions that contained minimal redactions to protect MetLife's confidential information and other nonpublic material in the record. This Court granted the parties' requests. *See, e.g.*, Minute Order of May 8, 2015 (granting FSOC leave to file its memorandum in support of its motion for summary judgment under seal); Minute Order of June 12, 2015 (same for Met-Life); *see also* ECF No. 18-1 (FSOC's sealed memorandum in support of its motion for summary judgment); ECF No. 22-1 (FSOC's public, redacted memorandum in support of its motion for summary judgment).

Throughout this litigation, the parties have continued to meet and confer about the appropriate scope of redactions to their briefs, and they subsequently filed public versions of their briefs that pared back the already-modest redactions. For example, in the second set of public

filings, only six lines of FSOC's 61-page memorandum in support of its motion for summary judgment were redacted, *see* ECF No. 84-1, and only 29 lines of MetLife's 70-page memorandum in support of its motion for summary judgment were redacted, *see* ECF No. 86-1.

The parties—again with this Court's authorization—also redacted confidential information from the joint appendix. *See* ECF No. 69 (sealed joint appendix); ECF Nos. 85, 100, 101 (public, redacted joint appendix); Minute Order of Sept. 3, 2015 (granting the parties leave to file the joint appendix under seal). While the public joint appendix initially redacted in full the confidential materials that MetLife voluntarily submitted to FSOC during the designation process, the parties undertook the time-consuming task of redacting the Final Designation on a line-by-line basis, even though they were under no statutory or regulatory obligation to do so. The parties filed the redacted version of the Final Designation as part of the public joint appendix, JA 341-727, along with hundreds of additional pages of material regarding FSOC's designation process, including correspondence between MetLife and FSOC, *see, e.g.*, JA 62-64, 65-67, 2513-16, 2517-21, 2734-36, 2737-38, 2739-42, 2743-45, 2747-49, 2755, 2762-63, correspondence between state insurance officials and FSOC, JA 2680-85, 2686-91, 2764-72, 2773-80, 2781-95, 2825-30, 2831-36, 2837-56, 2864-68, and the transcript of MetLife's oral hearing before FSOC, JA 2372-512.

The parties prepared the redacted Final Designation in advance of the deadlines for *amicus curiae* briefs, and the *amici* were therefore able to refer to that document in drafting their briefs. A total of eight *amicus curiae* briefs—four in support of each party—were filed in this Court without any of the *amici* suggesting that their arguments were in any way inhibited by the redactions to the parties' briefs or by a lack of access to the agency record. Better Markets was one of the *amici* that sought and received leave to file a brief in this case.

Before this Court issued its ruling on the merits, MetLife voluntarily reduced the amount of sealed material even further by filing new versions of its memorandum in support of its motion for summary judgment, its reply brief, and volumes 5 and 13 of the joint appendix, each containing fewer redactions than the versions initially filed.  ECF Nos. 100, 101.  These filings redacted only 16 lines of MetLife's 70-page memorandum, and 6 lines of MetLife's 35-page reply brief.[1]

Better Markets moved to intervene on November 19, 2015, seeking an order to show cause as to why the record should not be unsealed in full.  ECF No. 89.  The order would have required MetLife and FSOC to produce a "redaction log" that "specifically identif[ied], with respect to each document that has been placed under seal in whole or in part—(1) the particular justification(s) for the party's claim that the document or part thereof is properly redacted; and (2) the basis for the party's claim that the party's interest in redacting each such document in whole or in part outweighs the public's interest in having access to the record in this case."  ECF No. 89-2, at 45-46.  Both MetLife and FSOC opposed Better Markets' motion for an order to show cause, and MetLife also opposed Better Markets' motion to intervene.

On March 30, 2016, this Court issued its opinion on the merits rescinding FSOC's Final Designation of MetLife.  *MetLife, Inc. v. FSOC*, 177 F. Supp. 3d 219 (D.D.C. 2016) ("*MetLife I*").  The Court initially issued the opinion under seal and gave the parties until April 6, 2016, to propose redactions to the opinion.  ECF No. 106.  After neither party requested any redactions,

---

[1] The redactions to the joint appendix were reduced further when, earlier today, MetLife filed new versions of volumes 2, 3, 6, 7, 10, and 13.  Those new versions largely unseal FSOC's Proposed Designation of MetLife, which had previously been redacted in full, and also lift redactions on several other documents for which confidentiality protections are no longer necessary due to the passage of time.  *See* JA 123.

ECF No. 109, the opinion was immediately released in full to the public.  *See* Minute Order of Apr. 7, 2016.

On May 25, 2016, this Court issued another opinion granting Better Markets' motion to intervene but denying Better Markets' application for an order to show cause why the record should not be unsealed.  *MetLife, Inc. v. FSOC*, No. CV 15-0045 (RMC), 2016 WL 3024015 (D.D.C. May 25, 2016) ("*MetLife II*"), *rev'd*, 865 F.3d 661 (D.C. Cir. 2017).  This Court noted "how minimally redacted" the filings are in this case, with MetLife's final Motion containing "only two redactions in 71 pages of facts and argument" and "FSOC's final Motion contain[ing] two redactions in 62 pages."  *Id.* at *2 (citing ECF Nos. 100-1; 84-1).  "In short," the Court concluded, "the parties' filings are almost entirely open to the public," as was the "hearing on the parties' cross motions for summary judgment" and the hearing's "Transcript of Proceedings." *Id.*  The Court further emphasized that its opinion rescinding FSOC's designation of MetLife "is entirely unsealed" and that it "quotes extensively from those portions of FSOC's Final Determination on which the Opinion relies."  *Id.* at *6.  Thus, "[n]o basis for the Court's decision remains hidden from view."  *Id.* at *7.

Relying on 12 U.S.C. § 5322(d)(5)(A), this Court held that "congressional direction and court precedent support the redactions that have been made" because "Congress has determined that the information Better Markets is seeking to unseal must remain confidential."  *MetLife II*, 2016 WL 3024015, at *5.  As this Court explained, it would be "unthinkable that Congress would condition the confidential treatment of a company's information on that company's refraining from seeking judicial review expressly afforded to it by the same statute."  *Id.* at *6. This Court also rejected Better Markets' assumption that the Court "[did] not revie[w] the record in this case or the extensive briefs filed in it, and that the Court instead . . . allowed the parties

alone to determine what should be redacted." *Id.* at *1. The Court made clear that, on the contrary, it "reviewed the record and all of the briefs" and "concur[red] in the parties' judgment" regarding the portions of those materials that "should be redacted from public view." *Id.* at *6.

Better Markets appealed this Court's decision to the D.C. Circuit. The D.C. Circuit "recognize[d] that [the Court's] opinion in this case contains no redactions, and that MetLife and FSOC voluntarily strove to redact as little as they thought possible from their briefs and appendices." *MetLife III*, 865 F.3d at 674 n.17. It nevertheless held that the Dodd-Frank Act does not categorically mandate that courts seal parts of briefs and appendices containing information that a nonbank financial company has submitted to FSOC. The D.C. Circuit concluded that this Court should instead evaluate Better Markets' unsealing request by applying the six-factor common-law test articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). The court emphasized that, in applying these factors, "Dodd-Frank's confidentiality provision should weigh heavily in [the] analysis" and analogized that provision to "the confidentiality provision of the Federal Election Campaign Act," which "'create[d] an extraordinarily strong privacy interest in keeping records sealed' under *Hubbard*." *MetLife III*, 865 F.3d at 675 (quoting *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001)). The D.C. Circuit further underscored that, "[f]or documents containing sensitive business information," the *Hubbard* "factors often weigh in favor of sealing," and that "courts commonly permit redaction of that kind of information." *Id.* at 671. With that guidance, the D.C. Circuit vacated and remanded so that this Court could apply the *Hubbard* factors in the first instance. *Id.* at 675.

On remand, Better Markets argued "that it needs more information to apply the *Hubbard* test" and that this Court should order the parties to justify each redaction to a brief or the joint appendix in a privilege log. ECF No. 120, at 2. This Court denied that request, concluding that

Better Markets' proposed procedures "are not necessary to proceed according to the D.C. Circuit's mandate." *Id.* The Court explained that the "parties do not need detailed information about each sealed document or redacted passage in order to brief the Court on how the *Hubbard* factors might apply to each 'group of documents' under consideration." *Id.* (quoting *MetLife III*, 865 F.3d at 675). "Better Markets," this Court concluded, "can make specific arguments about the value of public access to the groups or types of documents at issue, or to the record as a whole based on the nature and subject matter of this case," but "Better Markets need not make document-specific arguments in order to make its point." *Id.*

## ARGUMENT

The *Hubbard* factors weigh overwhelmingly in favor of maintaining the confidentiality of the sealed materials in this case. The public has already been afforded extensive access to these proceedings through the parties' submission of minimally redacted briefs and a public version of the joint appendix that encompasses hundreds of pages of material, including selectively redacted copies of FSOC's Proposed Designation and Final Designation of MetLife, as well as through this Court's issuance of an opinion without any redactions at all. The minimal public interest in additional disclosures is far outweighed by the severe prejudice that MetLife would suffer from the public disclosure of its highly sensitive commercial information, which would also have a serious chilling effect on the willingness of other nonbank financial companies and their state regulators to voluntarily submit information to FSOC during future designation inquiries. Indeed, Congress has recognized the harm that nonbank financial companies—and FSOC's designation process—would experience from the disclosure of proprietary business information and nonpublic state regulatory materials submitted to FSOC by enacting Dodd-Frank's confidentiality provision, which "represent[s] a congressional judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC." *MetLife III*, 865 F.3d

at 675.  Further disclosure of the confidential record materials would therefore seriously harm MetLife and hamper FSOC's work in future designation proceedings without vindicating the public's interest in judicial access.

## I.   The *Hubbard* Factors Weigh Conclusively Against Unsealing.

Better Markets acknowledges that this Court may "unseal only for compelling reasons." ECF No. 121 ("Better Markets Br."), at 13.  Application of the six-factor test used by the D.C. Circuit to evaluate unsealing requests makes clear that Better Markets falls well short of that standard and that, in fact, compelling reasons militate in favor of maintaining the confidentiality of the materials under seal.

The six factors applied under the D.C. Circuit's *Hubbard* analysis are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("*Children's Ctr. I*") (citing *Hubbard*, 650 F.2d at 317-22).  While all six factors are relevant to the outcome, "a strong showing on one *Hubbard* factor can outweigh several other factors."  *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11 (D.D.C. 2013).  Here, the balance tips decisively in favor of denying Better Markets' unsealing request.

## A.   The Need For Public Access To The Sealed Materials Is Minimal.

First, the need for public access to the sealed materials is weak because Better Markets has not identified any specific, individualized need for accessing those materials.  Instead, Better Markets' unsealing request is premised on the "presumptive right of access" to judicial records that every member of the public may invoke.  Better Markets Br. 8.  That "abstract," "general-

ized" interest in public access is weaker than the "concrete, particularized" interests that weigh in favor of unsealing where it is the plaintiff or defendant itself that is seeking access to judicial records that are essential to its ability to litigate the claim at issue. *United States ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008); *see also id.* at 172-73 (holding that a False Claims Act defendant "need[ed]" access to the sealed exhibits to the complaint because it would be unable to "evaluate" its defenses or "craft a meaningful answer to relators' complaint" "[u]nless the exhibits are unsealed").

It is also relevant to the first *Hubbard* factor that Better Markets is seeking access to sealed briefs and appendix materials submitted by the parties, not to orders or opinions generated by the Court. The D.C. Circuit has made clear that the right of "[a]ccess to records" is intended to "ensur[e] the integrity of judicial proceedings," *Hubbard*, 650 F.2d at 314-15, by affording the public a means of "monitoring . . . judicial misconduct." *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991). The presumption of public access is therefore weaker where a movant is seeking to unseal "documents filed with the court or introduced into evidence"—which "often have a private character, diluting their role as public business"—rather than the "court's decrees, its judgments, [and] its orders, [which] are the quintessential business of the public's institutions." *Children's Ctr. I*, 98 F.3d at 1409. That is the case here, where the sealed documents that Better Markets is seeking to access disclose the proprietary commercial information of a private company, not the rulings or reasoning of a public tribunal.

The public already has ample means of evaluating this Court's decision rescinding Met-Life's designation as a nonbank systematically important financial institution. This Court's opinion is publicly available in full, and it "quotes extensively from those portions of FSOC's Final Determination on which the Opinion relies." *MetLife II*, 2016 WL 3024015, at *6. Thus,

as this Court explained, "the public is not left to guess at this Court's decisionmaking." *Id.* In fact, this Court gave the parties the opportunity to request redactions to its opinion, and neither party did so. *Id.* at *2.

The public also has an ample basis for evaluating the parties' arguments regarding the propriety of FSOC's Final Designation. The parties have filed 241 pages of briefs in this Court with redactions that comprise less than 1% of the total text. *See* ECF No. 84-1 (redacting only six lines of FSOC's 62-page memorandum in support of its motion for summary judgment); ECF No. 100-1 (two redactions constituting only 16 lines of MetLife's 70-page memorandum in support of its motion for summary judgment). On appeal, neither of FSOC's briefs in the D.C. Circuit had *any* redactions, and MetLife's brief redacted only four lines out of 64 pages. *See* Brief of Appellant, *MetLife, Inc. v. FSOC*, No. 16-5086 (D.C. Cir. June 16, 2016); Brief of Appellee at 61, *MetLife, Inc. v. FSOC*, No. 16-5086 (D.C. Cir. Aug. 15, 2016); Reply Brief of Appellant, *MetLife, Inc. v. FSOC*, No. 16-5086 (D.C. Cir. Sept. 9, 2016). Thus, both this Court's reasoning and the parties' arguments are fully accessible to the public.

In addition, the parties have produced selectively redacted public versions of both FSOC's Proposed Designation of MetLife and its Final Designation. JA 68-340; 341-727. MetLife and FSOC undertook the time-consuming task of redacting those documents on a line-by-line basis, even though they were under no statutory or regulatory obligation to do so. The parties provided the redacted Final Designation to their *amici* prior to the deadline for the submission of *amicus curiae* briefs in this Court, which enabled the *amici* to take FSOC's reasoning into account when formulating their arguments. (None of the *amici*, including Better Markets, protested that access to additional materials was needed.) The parties have also publicly disclosed, in full or in part, a number of other documents in the joint appendix. The publicly available joint

appendix includes correspondence between MetLife and FSOC, JA 62-67, 2513-21, 2734-45, 2747-49, 2755, 2762-63, correspondence between state insurance officials and FSOC, JA 2680-91, 2764-80, 2825-56, 2862-66, and the transcript of MetLife's oral hearing before FSOC (with minimal redactions), JA 2372-512.  The *amici*, the public at large, and companies that may be under consideration for designation in the future therefore have far more information about FSOC's grounds for designating MetLife than MetLife itself had about FSOC's prior designation decisions, and the agency record in its own proceeding, when it was being evaluated by FSOC. *See* ECF No. 86-1, at 11 n.6, 63-67 (discussing MetLife's unsuccessful FOIA requests and requests for access to the agency record).

As this litigation has progressed, MetLife and FSOC have continued to reduce the amount of sealed material by filing new versions of MetLife's memorandum in support of its motion for summary judgment, its reply brief, and volumes 2, 3, 4, 5, 6, 7, 10, and 13 of the joint appendix, each containing fewer redactions than the versions initially filed.  ECF No. 100; ECF No. 101; ECF No. 123.  The parties' decision to refile with fewer redactions underscores their commitment to produce a set of briefs and record materials that discloses as much information as possible while still safeguarding the legitimate privacy interests of both MetLife and its state regulators.

Because Better Markets invokes only a generalized interest in disclosure, and the public already has access to extensive briefing and record materials in this case, the first *Hubbard* factor weighs only weakly, if at all, in favor of unsealing the record.  *See Hubbard*, 650 F.2d at 317-18 (holding that the fact that the public already had access to the courtroom proceedings and the principal filings and decisions undercut the need for access to other documents).

### B.     The Public Has Not Previously Had Access To The Sealed Materials.

The public has not previously had access to the sealed materials, which either were submitted confidentially to FSOC during the designation process or refer to information contained in those confidential submissions.  Thus, the second *Hubbard* factor weighs against unsealing the record.  *See Hubbard*, 650 F.2d at 319-20; *Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 8.

Better Markets attempts to transform this factor—which considers whether the public has previously had access to the sealed "documents," *Children's Ctr. I*, 98 F.3d at 1409—into an inquiry into whether any of the "*information* under seal has previously been made public."  Better Markets Br. 25 (emphasis added).  For example, Better Markets suggests that it was inappropriate for MetLife to redact references in its briefing to General Electric's plan to divest large portions of General Electric Capital Corporation in response to its designation by FSOC.  *Id.* at 25-26.  But the second *Hubbard* factor focuses on whether the *documents*, not each individual source cited in those documents, was previously released to the public.  *See, e.g.*, *Hubbard*, 650 F.2d at 318 (examining whether there was prior "access to *the documents*") (emphasis added).  And this focus makes perfect sense:  Although underlying information included in a sealed document may be public, the ends for which a party may rely on that information may be confidential.  That is precisely the case here, where MetLife cited General Electric's divestiture plan to substantiate its argument that the costs of designation would outweigh the benefits because heightened federal regulatory oversight could compel MetLife to sell off portions of its business.  *See* ECF No. 100-1, at 61.  That possibility—which ultimately did come to pass after MetLife was designated, *see* Press Release, MetLife Announces Plan to Pursue Separation of U.S. Retail Business (Jan. 12, 2016), *available at* https://www.metlife.com/about-us/newsroom/2016/january/metlife-announces-plan-to-pursue-separation-of-u-s-retail/—was entirely nonpublic at the time that MetLife filed its briefs in this Court, but would have been readily

discernible by the public, to MetLife's substantial competitive detriment, if the references to General Electric had not been redacted. When the significant confidentiality interests underlying the redaction had passed, MetLife and FSOC lifted the redaction. *See* ECF No. 100-1, at 61.

Better Markets suggests that when the public has not previously had access to the documents in question, the second *Hubbard* factor is merely "neutral," as opposed to weighing in favor of sealing. Better Markets Br. 25. But the D.C. Circuit has long held that "[t]he lack of previous public access to documents . . . goes to the appropriateness of sealing those documents." *Children's Ctr. I*, 98 F.3d at 1409-10; *see also United States v. Harris*, 204 F. Supp. 3d 10, 17 (D.D.C. 2016) (weighing this factor "in favor of granting the request to seal"); *United States v. Thompson*, 199 F. Supp. 3d 3, 11 (D.D.C. 2016) (same). The second *Hubbard* factor therefore weighs in favor of maintaining the current seal.

### C.     Both The Plaintiff And The Defendant Object To Disclosure.

Better Markets fundamentally misunderstands the third *Hubbard* factor in arguing that the objections of MetLife and FSOC to unsealing are less relevant than the fact that no third party objects to unsealing.

As an initial matter, Better Markets is incorrect in suggesting that its desire to unseal the record is relevant to the third *Hubbard* factor. There will typically be at least one of the original parties to the case or an intervenor supporting unsealing if a court is applying the *Hubbard* analysis. Rather than giving weight to that position—which is subsumed within the first *Hubbard* factor—the third factor looks only to the identity of the persons who have "objected to disclosure." *MetLife III*, 865 F.3d at 665 (emphasis added; internal quotation marks omitted). In the *Fort Totten Metrorail Cases*, for example, the *Washington Post* intervened in order to seek access to judicial records, but the court did not afford the *Post*'s position any significance when

analyzing the third *Hubbard* factor and instead discussed only those persons who objected to disclosure.  960 F. Supp. 2d at 8-9.

Nor is Better Markets correct that this factor weighs against disclosure only in those cases where a nonparty is objecting to disclosure.  A party's privacy interests are entitled to no less weight than those of a nonparty, and courts have regularly rejected requests to unseal where the only opposition was from a party to the case.  *See, e.g.*, *Children's Ctr. I*, 98 F.3d at 1410; *Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 8-9.  Here, the plaintiff and the defendant stand united in their opposition to Better Markets' unsealing request, which weighs decisively against that request.

Better Markets attempts to diminish the force of the unanimous opposition of MetLife and FSOC to its request by arguing that FSOC's interest in preventing unsealing is only "derivative."  Better Markets Br. 28-29.  But FSOC has opposed Better Markets' unsealing request for reasons that go to the very core of its regulatory mission, explaining that it "object[s] to the disclosure of confidential business information submitted to the Council" because disclosure would have a "chilling effect" that would impair FSOC's ability "to reach an informed judgment under Section 113 of Dodd-Frank."  ECF No. 96, at 12.  As FSOC elaborated before the D.C. Circuit, "[t]he Council's ability to perform the duties Congress assigned to it—including examining non-bank financial companies for designation—rests on its ability to collect sensitive information about private financial institutions."  Brief for Federal Appellee at 20, *MetLife, Inc. v. FSOC*, No. 16-5188 (D.C. Cir. Nov. 16, 2016).  "Permitting the disclosure of MetLife's confidential business information or the confidential communications the Council receives from other regulators," FSOC emphasized, "could impair the Council's ability to collect that information."  *Id.* at 20-21.

16

FSOC's submissions—which echo concerns raised by MetLife—make clear that the third *Hubbard* factor also militates in favor of maintaining the confidentiality of the sealed materials.

> ### D. MetLife's Property And Privacy Interests In The Sealed Materials Are Extraordinarily Strong, And Both MetLife And FSOC Would Be Severely Prejudiced By Disclosure.

The application of the fourth and fifth *Hubbard* factors—the strength of MetLife's property and privacy interests and the possibility of prejudice to MetLife and FSOC—is substantially informed by the Dodd-Frank Act's requirement that FSOC "maintain the confidentiality of any data, information, and reports submitted" to it as part of the designation process. 12 U.S.C. § 5322(d)(5)(A); *see also Upshaw v. United States*, 754 F. Supp. 2d 24, 29 (D.D.C. 2010) (noting the interrelationship between the fourth and fifth *Hubbard* factors). As the D.C. Circuit emphasized, Section 5322(d)(5)(A) "should weigh heavily in [the Court's] analysis" under *Hubbard* and is analogous to the statutory guarantee of confidentiality under the Federal Election Campaign Act, which likewise evinces "'an extraordinarily strong privacy interest in keeping the records sealed.'" *MetLife III*, 865 F.3d at 675 (quoting *Sealed Case*, 237 F.3d at 666); *see also Sealed Case*, 237 F.3d at 666 (explaining that the Federal Election Campaign Act's confidentiality provision "only rarely, if ever," will be "counterbalance[d]" by "the remaining five *Hubbard* factors") (internal quotation marks, brackets, and ellipsis omitted). There is no reason for this Court to second-guess the "congressional judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC." *MetLife III*, 865 F.3d at 675.

MetLife's property and privacy interests in maintaining the confidentiality of its proprietary business information are plainly compelling. Courts have consistently "refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). To that end, courts regularly "exclude[ ]" the public, both temporarily and "permanently," from accessing "the records

of court proceedings to protect private" interests.  *MetLife III*, 865 F.3d at 671 n.12 (quoting *Hubbard*, 650 F.2d at 315 & n.81) (internal quotation marks and brackets omitted).

The cases cited by the D.C. Circuit in its opinion remanding the sealing issue—none of which Better Markets addresses in its brief—illustrate courts' longstanding commitment to shielding confidential business information from public scrutiny.  *See MetLife III*, 865 F.3d at 671 n.12.  In *Suture Express, Inc. v. Owens & Minor Distribution, Inc.*, 851 F.3d 1029 (10th Cir. 2017), for example, the Tenth Circuit granted "the parties' motions to seal . . . volumes 2–25 of the joint appendix"—a far more extensive sealing than the one at issue here—because "[t]he joint appendix contain[ed] confidential documents, financial information, and contracts" and "the confidential nature" of the documents "outweigh[ed] the public's right of access."  *Id.* at 1046, 1047 (internal quotation marks omitted).

Similarly, in another case cited by the D.C. Circuit, the Federal Circuit explained that a district court "abuse[s] its discretion" by "refusing to seal" confidential business information such as "pricing terms, royalty rates, and guaranteed minimum payment terms."  *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013) (internal quotation marks omitted). The district court in that case had committed just such an abuse of discretion by refusing to seal "detailed product-specific information concerning such things as costs, sales, profits, and profit margins" because the parties "ha[d] a significant interest in preventing the release of their detailed financial information" and "could suffer competitive harm if this information is made public."  *Id.* at 1224, 1225-26.

Here, it is unquestionable that MetLife would experience serious competitive harm from the disclosure of the sealed record materials, which are highly sensitive and cover virtually every aspect of MetLife's operations, business model, and balance sheet in a level of detail that far ex-

ceeds anything currently available in the public domain.  For example, volumes 6 through 12 of the joint appendix are the comprehensive voluntary submissions that MetLife produced to FSOC—with the promise of confidential treatment—in order to demonstrate that MetLife is not systemically important.  The sealed material is replete with sensitive information, including:

- Extensive details about MetLife's organizational structure, its business operations, and its contingency planning, JA 848-69; and

- The details of MetLife's consolidated assets, separate accounts, off-balance sheet exposures, and interconnectedness with other financial institutions, JA 878-932.

The redacted material from FSOC's Final Designation also refers to MetLife's highly sensitive business information, such as:

- The structural details of MetLife's securities lending program, JA 396;

- The top holders of MetLife's funding agreement-backed securities, JA 450;

- The amounts of MetLife's reinsurance arrangements with individual third-party reinsurers, JA 457;

- MetLife's top 20 derivatives counterparties, including notional amounts of derivatives, JA 467;

- MetLife's cash collateral liabilities, JA 470;

- MetLife's total separate account liabilities that are subject to surrender or early withdrawal, JA 522;

- MetLife's holdings of financial companies' senior and subordinated debt, JA 531;

- MetLife's general account liabilities, liability cash values, and separate account liabilities for surrenderable liabilities and contractual payments, JA 545; and

- MetLife's general account asset profile, JA 546.

In addition, the Oliver Wyman reports cited by Better Markets contain extensive analyses of the most sensitive confidential details of MetLife's financial condition and contingency planning, JA 1029-339, 2692-733, and rely on in-depth examinations of MetLife's balance sheet, the

details of MetLife's exposures and liabilities, and the possible effects on MetLife of various hypothetical scenarios of economic distress and policyholder surrender rates.[2]

To be sure, it would be possible to identify particular passages within the sealed materials that—when viewed in isolation—do not include confidential business information.  But that is invariably the case with respect to sealed materials.  It will always be possible to identify isolated sentences that do not refer to confidential information.  Better Markets does not cite a single case indicating that the unsealing inquiry must proceed in such a granular, artificial, and time-consuming manner.  *See also infra* Part II.  This Court should instead view each passage of the sealed materials in the context of the full document of which it is a part.  Language that might appear innocuous in isolation can in fact reveal highly sensitive information when viewed in conjunction with other passages or against the backdrop of the document as a whole.

Thus, the narrative portions of MetLife's voluntary submissions in which it synthesizes the raw financial data into arguments that demonstrate that the Company is not systemically important are just as sensitive as bare numbers and other empirical data.  They all shed light on MetLife's finances, operations, business relationships, and contingency planning.  If that information were publicly disclosed, MetLife's competitors could exploit their knowledge of MetLife's most closely guarded proprietary information to secure a competitive advantage and enhance their strategic position.  The unavoidable result would be irreparable financial harm to MetLife.

---

[2] Better Markets also points to the "Memorandum from Mayer, Brown & Platt on Behalf of MetLife, Inc. to the Federal Reserve," which this Court cited in *MetLife I*, 177 F. Supp. 3d at 231 n.9 (citing JA 2522-65); *see also* Better Markets Br. 24.  MetLife subsequently unsealed that document in full in light of its determination that the material therein is now outdated or already in the public domain.  *See* ECF No. 123-6.

FSOC would also be severely prejudiced by disclosure of the sealed materials because unsealing the record in this case would have a chilling effect on the willingness of other companies to provide FSOC with the information necessary for it to reach an informed judgment regarding designation.  While FSOC has the authority to compel companies to submit information to the agency, *see* 12 U.S.C. § 5322(d)(3)(A), it cannot compel a company to compile the type of extensive submissions—complete with multiple expert reports and substantial legal analysis— that MetLife voluntarily produced for FSOC during its designation process.  Disclosure would have a similar chilling effect on state insurance regulators, which would deprive FSOC of another important source of information when making designation decisions.

The prejudice that MetLife and FSOC would suffer from disclosure is precisely why Congress included the confidentiality guarantees in Section 5322(d)(5)(A); why FSOC promulgated parallel protections in its rules and implementing regulations, *see* 12 C.F.R. § 1310.20(e)(1) and FSOC Rules of Organization § XXX.10; and why FOIA has long included an exception for "trade secrets and commercial or financial information," 5 U.S.C. § 552(b)(4). Better Markets' amorphous interest in public disclosure is manifestly inadequate to overcome these interlocking guarantees of confidentiality.

In response, Better Markets contends that confidential business information warrants protection from public disclosure under *Hubbard* only if it constitutes a "bona fide trade secret[ ]." Better Markets Br. 32.  But that argument is impossible to reconcile with the D.C. Circuit's statement that, "[f]or documents containing sensitive business information *and* trade secrets, [the *Hubbard*] factors often weigh in favor of sealing." *MetLife III*, 865 F.3d at 671.  Thus, the confidentiality protections embodied in *Hubbard* plainly extend beyond trade secrets to other types of "sensitive business information." *Id.*  This is consistent with the approaches that other circuits

apply to unsealing requests, including the Federal Circuit in the *Apple v. Samsung* decision favorably cited by the D.C. Circuit in this case, where the court concluded that it "did not [need to] make a formal determination of whether" the materials that the parties sought to keep under seal were "trade secrets" because, at a minimum, "they are 'sources of business information that might harm a litigant's competitive standing.'" 727 F.3d at 1225 n.3 (quoting *Nixon*, 435 U.S. at 598); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (holding that sealing may be appropriate for a "trade secret or *something comparable whose economic value depends on its secrecy*") (emphasis added).

In fact, even Better Markets' own authorities acknowledge that "sensitive, confidential, or privileged material" qualifies for protection under *Hubbard*. *Am. Prof'l Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013) (internal quotation marks omitted); *see also* Better Markets Br. 32 n.15. Thus, the sealed information in the record warrants protection from public disclosure whether or not it constitutes a trade secret because it represents proprietary information about the most sensitive aspects of MetLife's business. *MetLife III*, 865 F.3d at 671.[3]

Better Markets also attempts to cast doubt on the propriety of the parties' sealed submissions by arguing that the portions of the record that MetLife has voluntarily unredacted do not seem "intensely private or confidential." Better Markets Br. 34. At the time the now-unsealed material was submitted to the Court under seal, however, its public disclosure would indeed have

---

[3] Moreover, the sealed information would constitute a trade secret because, as the Federal Circuit explained, "trade secret" is a "broad" term that includes "'any compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Apple*, 727 F.3d at 1225 n.3 (quoting Restatement (First) of Torts § 757) (ellipsis omitted). That capacious definition readily encompasses the detailed information about MetLife's finances, operations, and strategic planning in the sealed portions of the record.

revealed highly sensitive, nonpublic information about MetLife.  For example, the parties initially kept under seal MetLife CEO Steven Kandarian's statements during the FSOC oral hearing that, if MetLife were designated, it was possible that the Company would "breakup."  JA2390-92, JA2476-82; *compare* ECF No. 85-5, at 25-27, 112-17, *with* ECF No. 100-4, at 25-27, 112-17; *see also* Better Markets Br. 34.  Additionally, as previously discussed, MetLife sealed a passage in its summary-judgment briefing in which it pointed to "General Electric Company['s] . . . plan[ ] to sell off most of the assets of General Electric Capital Corporation," and stated that "[i]n the case of MetLife, the Chief Executive Officer advised FSOC that designation could result in the break-up of the Company."  *Compare* ECF No. 39-1, at 61, *with* ECF No. 100-1, at 61; *see also* Better Markets Br. 26.  While Better Markets calls these redactions "puzzling," *id.* at 34, there are few pieces of information about a company that are more sensitive than the plans of its CEO to break up the company in the event that certain eventualities come to pass.  The public disclosure of that information would unsettle the securities markets, disturb the competitive playing field, and sow confusion among employees.  Once MetLife was designated by FSOC, the Company did in fact spin off the vast majority of its U.S. retail insurance operations in a transaction that fundamentally altered MetLife's financial and operations footprint.  *See* Press Release, *supra*.  At that point, MetLife voluntarily unsealed those portions of the record that had been sealed to prevent public disclosure of the restructuring that MetLife was considering in the aftermath of its potential designation.  *See* ECF Nos. 100-1, 100-2, 100-3, 100-4.  That is precisely how the sealing process should work.

Thus, none of Better Markets' arguments detracts from MetLife's property and privacy interests, or calls into question the prejudice that MetLife and FSOC would suffer from unsealing.

### E. Unsealing Would Be Inconsistent With The Purpose For Which The Sealed Materials Were Introduced.

The final *Hubbard* factor—the purpose for which the documents were provided to the Court—also weighs against disclosure.  Both the confidential record materials in the joint appendix and the portions of the briefs referring to those confidential materials were filed with this Court as part of MetLife's statutorily authorized challenge to FSOC's decision to designate the company a nonbank systemically important financial institution.  *See* 12 U.S.C. § 5323(h).  Preserving the confidentiality of those materials is consistent with that purpose—and with Congress's decision to authorize judicial review of FSOC's designation decisions—because unsealing the materials would punish MetLife for invoking its statutory right to judicial review and deter other companies from invoking that right in response to future designation decisions.  *See Pepsico, Inc. v. Redmond*, 46 F.3d 29, 30 (7th Cir. 1995) ("Disclosing the secrets to the world is not an appropriate price for the privilege of" engaging in litigation).

Thus, contrary to Better Markets' assertions, the fact that the sealed materials "were filed with the Court precisely for the purpose of proving the merits" of MetLife's challenge to its designation weighs *in favor* of keeping those materials under seal, not against it.  Better Market Br. 41.  Congress not only expressly authorized this suit but also made a "judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC" by including a statutory confidentiality provision in Dodd-Frank.  *MetLife III*, 865 F.3d at 675.  Unsealing the record materials would undermine the congressional objectives animating Dodd-Frank and impose an unwarranted burden on MetLife's statutorily authorized right to challenge FSOC's designation decision.  *Cf. Hubbard*, 650 F.2d at 321 (commenting, in applying the sixth factor, that "it would be ironic indeed if one who contests the lawfulness of a search and seizure

were always required to acquiesce in a substantial invasion of those interests simply to vindicate them").

\*       \*       \*

The *Hubbard* factors weigh resoundingly in favor of maintaining the confidentiality of the sealed materials.  Better Markets' invocation of a generalized public interest in judicial access is not remotely sufficient to justify disclosure of that highly sensitive, commercially valuable information.  The sealed documents have always been nonpublic; were submitted under seal with the agreement of both the plaintiff and the defendant; refer to the most closely held information about MetLife's finances, operations, and strategic plans; and were filed with this Court as part of MetLife's statutorily authorized challenge to FSOC's designation decision and in accordance with Congress's statutorily embodied judgment regarding the importance of maintaining the confidentiality of material submitted to FSOC.  Better Markets' application for an order to show cause should be denied in full.

## II.    The *Hubbard* Factors Can Be Applied Without The Page-By-Page Inquiry That Better Markets Requests.

Better Markets seeks to relitigate its repeated requests for a detailed privilege log, a magistrate judge, and an independent counsel to conduct an analysis of each redaction in the joint appendix and the parties' briefing.  *See* Better Markets Br. 4, 11, 12 n.6, 14 n.7.  But this Court has already held that Better Markets' proposal is "unnecessary and would unduly delay resolution" of its unsealing request.  ECF No. 120, at 1.  As this Court explained, Better Markets "do[es] not need detailed information about each sealed document or redacted passage in order to brief the Court on how the *Hubbard* factors might apply to each 'group of documents' under consideration."  *Id.* at 2 (quoting *MetLife III*, 865 F.3d at 675).  The Court emphasized that "Better Markets need not make document-specific arguments in order to make its point."  *Id.*

25

Accordingly, this Court can undertake the analysis that the D.C. Circuit envisioned without acceding to Better Markets' unorthodox procedural requests.  As the D.C. Circuit recognized, this Court already has "considerable familiarity" with the sealed materials, *MetLife III*, 865 F.3d at 676, and can satisfy its obligation to apply the *Hubbard* factors with reference to "group[s] of documents," *id.* at 675 (internal quotation marks omitted), rather than through the type of page-by-page examination requested by Better Markets.  Indeed, this Court already "reviewed the record and all of the briefs" in connection with the prior briefing on Better Markets' application for an order to show cause and concluded that unsealing would be inappropriate.  *MetLife II*, 2016 WL 3024015, at *6.[4]

Nothing in *Hubbard* requires the type of line-by-line justification that Better Markets seeks.  Courts regularly apply the *Hubbard* analysis without a detailed log providing justifications for each redaction.  *See, e.g.*, *Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 6-7; *Fudali v. Pivotal Corp.*, 623 F. Supp. 2d 25, 28 (D.D.C. 2009).  In fact, several of the *Hubbard* factors "can be weighed without examining the contents of the documents at issue" at all.  *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140 (D.D.C. 2012) (quoting *Hubbard*, 650 F.2d at 317).

Better Markets continually complains that it is at a "disadvantage" in briefing the *Hubbard* factors because it does not have access to the confidential portions of the record.  Better Markets Br. 11, 26, 40.  But that is always the case when a moving party seeks to unseal the rec-

---

[4] Better Markets is incorrect when it claims that "the parties actually expressed a willingness to prepare the privilege logs" as long as the burden was not imposed during the period preceding the oral argument in this Court.  Better Markets Br. 7 n.5.  In reality, MetLife provided the Court with numerous reasons to deny Better Markets' request for the parties to compile a privilege log, ECF No. 95, at 8-10, and has consistently opposed that request, including well after the oral arguments in both this Court and the D.C. Circuit, *see* ECF No. 118, at 1-3.

ord and has never been viewed as entitling the party challenging the sealing to a privilege log or the appointment of an independent counsel or magistrate judge. *See, e.g.*, *Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 2 (intervenor, seeking to unseal judicial records, briefed the *Hubbard* factors despite the lack of access to the record or a privilege log).

Ultimately, the compilation of a privilege log would be an empty exercise here because, whether examined on a document-by-document basis or a page-by-page basis, the fact remains that Better Markets is seeking to unseal some of the most highly sensitive information about MetLife's business. As Congress recognized when enacting Dodd-Frank, far from promoting the public interest, unsealing those materials would undermine MetLife's competitive standing and jeopardize FSOC's ability to collect information in future designation inquiries. All relevant common-law, statutory, and prudential considerations therefore point in favor of denying Better Markets' unsealing request.

## CONCLUSION

This Court should deny Better Markets' application for an order to show cause why the record should not be unsealed.

Respectfully submitted,

Dated: January 31, 2018

/s/ Eugene Scalia
Eugene Scalia (D.C. Bar No. 447524)
  *Counsel of Record*
EScalia@gibsondunn.com
Amir C. Tayrani (D.C. Bar No. 490994)

Indraneel Sur (D.C. Bar No. 978017)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Plaintiff MetLife, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January, 2018, I caused the foregoing Memoran-
dum of Points and Authorities in Support of Plaintiff's Opposition to Better Markets' Applica-
tion for an Order to Show Cause Why the Record Should Not Be Unsealed to be filed via the
Court's CM/ECF system.  I further certify that service was accomplished on all parties via the
Court's CM/ECF system.


/s/ Eugene Scalia
Eugene Scalia