**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MetLife, Inc.,**<br>**Plaintiff,**<br>**v.**<br>**Financial Stability Oversight Council,**<br>**Defendant.** | ) | **Civil Action No. 15-45 (RMC)** |

**OPINION**

In December 2014, the Financial Stability Oversight Council (FSOC) determined that insurance company MetLife, Inc. was a nonbank financial company whose financial distress could pose a threat to the financial stability of the United States. That determination placed MetLife under the supervision of the Board of Governors of the Federal Reserve and was the subject of litigation in this Court. This opinion does not address that litigation, which has since been settled. Rather, it addresses a motion by intervenor Better Markets, Inc. to unseal corporate and government documents filed with this Court by MetLife and FSOC as part of those proceedings.

When last this matter was before this Court, it denied Better Markets' motion to unseal the documents because this Court read the privacy protections of the Dodd-Frank statute to evidence a binding congressional intent to keep such documents confidential. On appeal, the D.C. Circuit found that the intent of Congress, while weighing heavily in favor of confidentiality, was not categorical. It reversed and remanded, directing the use of the six-factor analysis from *United States v. Hubbard* to determine whether the relevant documents should remain under seal. Accordingly, this opinion addresses that analysis and concludes that the *Hubbard* factors do not

support release of those documents that remain under seal, either in whole or in part. Better Markets' motion will be denied.

## I. FACTS

### A. Litigation After the MetLife Determination by FSOC

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank"), was adopted to strengthen oversight of banks and other financial institutions after the financial crisis of 2008. One of its reforms was to create the Federal Stability Oversight Council, which was given the authority to determine that financial distress at a nonbank financial company could pose a threat to the financial stability of the United States. *See* 12 U.S.C. § 5323(a). Such companies, otherwise referred to as systemically important financial institutions (SIFIs), or "too big to fail," are subject to supervision by the Board of Governors of the Federal Reserve System. To help it make such determinations, Congress authorized FSOC to compel nonbank financial companies to submit extensive operational and financial data. *Id.* § 5322(d)(3)(A). However, Congress also required FSOC to "maintain the confidentiality of any data, information, and reports," submitted by such companies. *Id.* § 5322(d)(5)(A).

FSOC notified MetLife in July 2013 that it was considering the insurance company for determination as a SIFI. MetLife then voluntarily submitted over 21,000 pages of documents to FSOC in an attempt to persuade FSOC to the contrary. Nonetheless, in December 2014, FSOC determined that financial distress at MetLife could threaten the financial stability of the United States. *See Basis for the Financial Stability Oversight Council's Final Determination Regarding MetLife, Inc.*, 2 (2014), https://www.treasury.gov/initiatives/fsoc/designations/. MetLife challenged that determination in this Court.

During summary judgment briefing, FSOC and MetLife filed multiple briefs and documents with the Court including a 16-volume, 3,000-page joint appendix and 32 supervisory documents from regulators in the States in which MetLife does business, which altogether form the relevant excerpts from FSOC's administrative record for this case. Due to the large amounts of confidential business information in those documents, the Court authorized the parties to file them under seal and to redact confidential information from documents placed on the public record. *See, e.g.*, 5/8/2015 Minute Order (granting leave to file briefs under seal); 9/3/2015 Minute Order (granting leave to file the joint appendix under seal).[1]

As the case progressed, MetLife and FSOC (without prompting from the Court) continued to review the sealed documents and release to the public those portions whose information was no longer confidential. Thus, on September 30, 2015, the parties filed redacted copies of their final briefs on the public docket. *See* Notice of Filing Redacted Doc. [Dkt. 84]; Notice of Filing Redacted Doc. [Dkt. 86]. They also filed redacted copies of Volumes 1, 4, 5, and 12-15 of the joint appendix, s*ee* Notice of Filing Redacted Doc. [Dkt. 85], including an extensive line-by-line redaction of FSOC's *Explanation of the Basis of Final Determination* (Final Determination), *see* [Dkt. 85-2 and 3]. These redacted copies were filed on a timely basis for various *amici curiae*, including Better Markets, to review before filing their motions on the merits of the determination. On January 27, 2016, MetLife filed updated copies of its briefs and Volumes 5 and 13 of the joint appendix, with fewer redactions than before. *See* Notice of Filing

[1] The sealed documents, including the motions, briefs, and joint appendix, were filed as [Dkts. 19, 41, 57, 58, 64, 66, and 69].

Public Versions of Brs. And J.A. [Dkt. 100].[2] On February 5, 2016, FSOC followed suit with its own briefs. *See* Defs.' Resp. to MetLife's Suppl. Points and Authorities [Dkt. 102].

On February 10, 2016, the Court held a public hearing—with overflow courtroom space to allow full public attendance—on the parties' cross-motions for summary judgment. The transcript of that hearing was made available to the public. *See* Tr. of Mar. 31, 2016 Mots. Hr'g [Dkt. 108].

On March 30, 2016, this Court issued its opinion and rescinded FSOC's Final Determination. *See MetLife, Inc. v. FSOC*, 177 F. Supp. 3d 219 (D.D.C. 2016) (*MetLife I*). That opinion is unredacted and available to the public. The parties subsequently settled the matter while the case was pending on appeal; this Court's final order is available to the public. *See* Order Den. Joint Mot. to Vacate [Dkt. 129].

**B. The Motions to Unseal**

Parallel to the summary judgment proceedings, Better Markets moved to intervene and to unseal the record, including the briefs and joint appendix. *See* Better Mkts. Mot. to Intervene [Dkt. 89]. This Court granted the motion to intervene. However, it read the privacy protections of Dodd-Frank to evidence a binding congressional intent to keep the materials submitted to FSOC confidential and so denied the motion to unseal. *See MetLife, Inc. v. FSOC*, No. 15-0045, 2016 WL 3024015 at *6 (D.D.C. May 25, 2016) (*MetLife II*).

The Circuit Court for the District of Columbia Circuit reversed, finding that this Court had read the requirements of Dodd-Frank too broadly and needed to perform the six-factor analysis adopted in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *See MetLife, Inc.*

[2] MetLife determined there was a redaction error in Volume 5 of the joint appendix and re-filed a corrected version on February 4, 2016. *See* Notice of Filing Vol. 5 of J.A. [Dkt. 101].

*v. FSOC*, 865 F.3d 661, 675 (D.C. Cir. 2017) (*MetLife III*). The D.C. Circuit remanded for such an analysis. On December 20, 2017, Better Markets filed the instant motion to unseal the remaining documents or at least compel FSOC and MetLife to file detailed explanations why each document or redaction must remain sealed. *See* Better Mkts. Mot. to Unseal (B. Mkts. Mot.) [Dkt. 121].

Finally, on January 31, 2018, MetLife and FSOC filed updated public versions of Volumes 2, 3, 6, 7, 10, and 13 of the joint appendix, again with fewer redactions. *See* Notice of Filing Redacted Document [Dkt. 123]. Thus, at the time of this opinion, approximately 2,300 pages (a little over half) of the administrative record remain wholly under seal and another 1,400 pages (including FSOC's Final Determination) contain limited-to-no redactions. Additionally, the Court's opinion and substantially all of the parties' briefs are unredacted. FSOC states that "[t]he only portions of the record that remain under seal in this case are those that either (1) MetLife has deemed to contain confidential business information or (2) contain supervisory information submitted to FSOC in confidence by state insurance regulators." FSOC Opp'n to Mot. to Unseal (FSOC Opp'n) [Dkt. 125] at 5. It is those documents that are now at issue.

## II. LEGAL STANDARD

Courts in this Circuit apply the six-factor analysis articulated in *United States v. Hubbard* when balancing one or more parties' interests in keeping a document sealed against the public's interest in disclosure. Those six factors are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife III*, 865 F.3d at 665 (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650 F.2d at 317-22)). "There is a strong presumption in favor of public access to judicial proceedings." *Id.* (quoting *Hubbard*, 650 F.2d at 317) (internal marks omitted). However, "the tradition of access is not without its time-honored exceptions" and "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Hubbard*, 650 F.2d at 315 (quoting *Nixon v. Warner Commc'ns, Inc.* 435 U.S. 589, 598 (1978)).

## III. ANALYSIS

### A. Scope of Document Review

Better Markets argues that this Court "must . . . for *each piece of sealed or redacted information* . . . conduct an intensive and thorough analysis" and must "supply its reasoning with respect to the specific information at issue." B. Mkts. Mot. at 8-9 (emphasis added). But Better Markets misunderstands the scope of the inquiry here. This Court addresses the *Hubbard* factors with respect to the "groups of documents" with which it is already familiar and not "pieces of information." *MetLife III*, 865 F.3d at 675. Specifically, the Court easily discerns three different groups of documents: (1) those originating with FSOC; (2) those originating with MetLife; and (3) those originating with the State insurance regulators. Much of the analysis below applies equally to all three groups. However, particularly under the fourth and fifth factor for analysis, each group also has its own strong claim for confidentiality.

In the alternative, Better Markets asks the Court to require FSOC and MetLife to provide "specific justifications for confidentiality as to each sealed document or redacted portion" to aid the Court with a *Hubbard* analysis. B. Mkts. Mot. at 2. Neither FSOC nor MetLife has provided the Court or Better Markets with a document-by-document privilege or confidentiality log. But each party, including Better Markets, has sufficiently described their

interests and the potential prejudice from unsealing and there is no hint that either FSOC or MetLife, which were adversaries before this Court, has acted in bad faith in any manner or means during this litigation, which might otherwise prompt a court to second guess their explanations. Further, upon review of the documents—to which Better Markets is not privy but the Court is familiar—the Court finds that their substance speaks for itself. The Court will not force the parties to engage in costly time- and labor-intensive endeavors merely to demonstrate what is already apparent.

### B. *Hubbard* Analysis

#### *1. The Need for Public Access*

With regards to the need for public access to the sealed documents, it is first necessary to highlight just how much of the record in this case has already been published. This Court's opinion is completely available to the public. Similarly, briefing by both the government and MetLife is largely available to the public—of the 241 pages of briefs filed with this Court, less than 1% of the text remains redacted. FSOC's Final Determination is largely unredacted. Further, while over half the joint appendix remains under total or partial seal, both FSOC and MetLife continued to unseal the appendix as their litigation proceeded and the confidentiality of those documents lost its importance. *See* Notices of Filing [Dkts. 86, 100, 101, 123]. Indeed, FSOC and MetLife have unsealed or unredacted documents and briefs both before and after this Court issued its ruling in *MetLife II*, in each instance without prompting from this Court.

Second, the particulars of the Court's decision in *MetLife I* were rooted in procedural principals of administrative law, not in the financial substance of the parties' arguments. As discussed by the D.C. Circuit, this does not mean that the Court did not review or rely on the joint appendix. *See MetLife III*, 865 F.3d at 667 ("[T]he joint appendix contains information with which the parties hope to influence the court, and upon which the court must

base its decision.”). But it does mean that even without these documents, the Court’s ultimate reasoning is entirely understandable by and accessible to the public. *Cf. Hubbard*, 650 F.2d at 317-18 (finding access to certain documents and proceedings more critical to public access than others); *In re McCormick & Co., Inc., Pepper Prods. Mktg. and Sales Practices Litig.*, No. 15-1825, 2018 WL 2926156 at *12 (D.D.C. June 11, 2018) (“[D]isclosing original source documents, as opposed to pleadings and declarations, may be of less value to [the] public’s understanding of the judicial process.”).

Finally, Better Markets advances only a generalized and unspecific public interest in the information that remains sealed without explaining why any particular group of documents is critical to that interest. The public interest is served by general access to judicial proceedings, but it is also served by the proper functioning of FSOC and State insurance regulators and their ability to effectively investigate regulated entities such as MetLife. The extent to which those investigations might be harmed is discussed further in Section III.B.4 and 5, *infra*, but the Court finds that the purposes of public access “are only modestly served” by further unsealing of this record. *Cf. Hubbard*, 650 F.2d at 319.

*2. The Extent of Previous Public Access*

“Previous access is a factor which may weigh in favor of subsequent access” because it informs the extent to which the information under seal can and should reasonably be kept from further public dissemination. *Id.* at 318. However, the joint appendix and briefings that remain sealed were not previously publicly available and would not be available without further releases from either the parties or this Court. “As there was no such prior access, this does not weigh in favor of disclosure.” *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017).

Better Markets argues that now-unsealed portions of the joint appendix refer to information that was already available in the public domain, that Better Markets cannot know

what other sealed information is also already available in the public domain, and that this militates in favor of unsealing the entire joint appendix or at least requiring the parties to identify any information already publicly available.

But context matters here. This Court agrees with MetLife that "[l]anguage that might appear innocuous in isolation can in fact reveal highly sensitive information when viewed in conjunction with other passages or against the backdrop of the document as a whole." MetLife Opp'n to Mot. to Unseal (MetLife Opp'n) [Dkt. 124] at 24. In that vein, the joint appendix is better thought of as its own document that is distinct from, and greater than the sum of, its constituent parts. Incidental publication of parts of the joint appendix does not reveal nearly as much as seeing the same information in the context of State regulatory scrutiny and FSOC's investigation.

Indeed, the now-unsealed references to General Electric by MetLife—which Better Markets cites in support of its case—actually cut against Better Markets and offer a prime example of the importance of context. Better Markets correctly states that General Electric's sale of part of its business to avoid designation as a systemically important financial institution was public knowledge at the time MetLife referred to it in the interchanges with FSOC. However, MetLife convincingly argues that it discussed General Electric in the context of explaining that a similar determination of MetLife could (and ultimately did) result in a similar breakup of MetLife's various businesses. "That possibility . . . was entirely non-public at the time that MetLife filed its briefs . . . but would have been readily discernible by the public, to MetLife's substantial competitive detriment, if the references to General Electric had not been redacted." MetLife Opp'n at 14-15. Because MetLife's internal considerations were not made public, MetLife was better able to sell off parts of its business at an appropriate time and price.

Finally, even if portions of the joint appendix still under seal are already publicly available, there is no reason to believe that unsealing those portions is necessary to their continued public availability elsewhere. Information about General Electric was publicly available both before it was revealed as a reference in these briefs and after. Put another way, the only reason to unseal otherwise available information, even if not known to Better Markets, would be to reveal the context in which that information was submitted to FSOC, MetLife, or this Court, further supporting MetLife's argument. That critical context is not already in the public domain. As such, this factor does not support unsealing.

*3. The Fact of Objection to Disclosure*

As in *Hubbard*, objections by third parties whose records have been dragged into litigation weigh against disclosure but the same analysis does not necessarily protect information from the parties themselves. *Hubbard*, 650 F.2d at 319-20. MetLife and FSOC both object to further disclosure and "the strength with which a party asserts its interests is a significant indication of the importance of those rights to that party." *Id.* at 319. However, "litigants to this proceeding have a lesser claim to privacy than third parties; . . . [the parties] affirmatively presented evidence . . . in order to obtain an adjudication on the merits of their claims." *McConnell v. Federal Election Commission*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003). That is not to say that the parties' objections have no weight, but the importance of their objections is more directly addressed in factors four and five below. As to documents originating with FSOC and MetLife, this factor is neutral.

That said, FSOC also objects in order to defend the privacy interests of State regulators which rely on their own assurances of confidentiality with State-regulated entities and with which FSOC has information-sharing memoranda of understanding (MOUs). Although State regulators have not intervened to object directly, they provided declarations in support of

FSOC's earlier briefs and those declarations are again relied upon here. *See* FSOC Opp'n at 7-8; *see also* Mark McLeod Decl. [Dkt. 52-1]; Kathryn Belfi Decl. [Dkt. 52-2]. Unlike in *Hubbard*, where the papers in question were "seized from a third party," *Hubbard* 650 F.2d at 295, State regulators voluntarily provided their documents to FSOC. However, given the MOUs in place and the State regulators' declarations, none of the States anticipated a full public release of their records and it is questionable whether any State intended its documents to be before this Court in the same manner. *Cf.* Order to Compel at 4 (finding State regulators cannot "diminish MetLife's right to challenge the full record considered by [FSOC]"). As to documents originating with State regulators, and particularly those 32 documents that were flagged as extremely sensitive, this factor weighs in favor of sealing.

*4. The Strength of the Property and Privacy Interests Asserted*

In Dodd-Frank, Congress directed FSOC to "maintain the confidentiality of any data, information, and reports" that it received during its investigations, 12 U.S.C. § 5322(d)(5)(A), and FSOC promulgated regulations to the same effect. *See* 12 C.F.R. § 1310.20(e)(1). Although the D.C. Circuit held that Dodd-Frank's confidentiality provision does not categorically protect information submitted to FSOC from public disclosure, "it does represent a congressional judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC" and "should weigh heavily in [the *Hubbard*] analysis." *MetLife III*, 865 F.3d at 675. Indeed, "[f]or documents containing sensitive business information and trade secrets, those factors often weigh in favor of sealing and . . . courts commonly permit redaction of that kind of information." *Id.* at 671; *see also id.* at n.12 (collecting citations).

FSOC argues accordingly. Specifically, as to the documents originating with FSOC, it argues that Congress's directive to FSOC to protect submitted information follows

from Congress's understanding that FSOC's broad investigative authorities under Dodd-Frank give it "access to valuable information about the business of many firms." *Establishing a Framework for Systemic Risk Regulation: Hearing Before the S. Comm. on Banking, Hous. & Urban Affairs*, 111th Cong. 108, 123 (July 23, 2009) (prepared questions of Sen. Bunning) (expressing concern about the release of such information). Further, while this authority "gives FSOC a trump card," *MetLife III*, 865 F.3d 672, it is "no substitute for open and voluntary cooperation; FSOC can accomplish its purposes and duties most effectively and efficiently if the companies (as well as their regulators) are willing to engage openly with FSOC and voluntarily provide information that they deem confidential—even information that FSOC has not specifically requested." FSOC Opp'n at 8. As to the documents originating with MetLife, MetLife argues that its "property and privacy interests in maintaining the confidentiality of its proprietary business information are plainly compelling." MetLife Opp'n at 17.

The Court agrees that the "congressional judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC," *MetLife III*, 865 F.3d at 675, informs the decision here. MetLife has described the types of sensitive information that remain sealed to include extensive details of MetLife's operations and programs, finances and financial arrangements, and business planning and relationships, *see* MetLife Opp'n at 19-20, and the Court's own review of the documents confirms both the extent to which such information can be found and its sensitivity. This information is distinctly nonpublic and is entitled to protection from public exposure.

With respect to State insurance regulators, FSOC similarly argues that Dodd-Frank requires it to consult with State insurance authorities and that the only materials related to those consultations that remain redacted are those that "the [State] regulators reviewed and

specifically identified as containing sensitive supervisory information." FSOC Opp'n at 5. This Court has previously recognized the importance of keeping those materials confidential and limited their release only to MetLife's outside counsel, but not MetLife itself. *See* Order to Compel.[3] Further, documents from State insurance regulators contain large amounts of confidential business information belonging to MetLife that warrant protection for the same reasons as MetLife's own submissions to FSOC.

Better Markets responds that *Hubbard* is "typically" interpreted to protect only confidential business information which constitutes trade secrets. B. Mkts. Mot. at 32; *id.* at 32 n.15 (citing *Am. Pro'l Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013)). This Court does not accept the offer to read *Hubbard* in such a crabbed fashion,[4] particularly in light of the congressional direction that financial and competitive information submitted to FSOC warrants confidential handling. *See* 12 U.S.C. § 5322(d)(5)(A). As the D.C. Circuit noted, Dodd-Frank's explicit statutory support for confidentiality is analogous to a provision in the Federal Election Campaign Act, 52 U.S.C. § 30101 (FECA), which recognizes "'an extraordinarily strong privacy interest in keeping . . . records sealed.'" *MetLife III*, 865 F.3d at 675 (quoting *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001)); *see*

---

[3] Better Markets reads the Court's grant of MetLife's motion to compel production of State insurance regulators' submissions to FSOC as evidence that those documents do not warrant *Hubbard* protection. To the contrary, this Court ordered a very limited release of such documents precisely because they remained under seal. *See* Order to Compel [Dkt. 93] at 5 (listing the "safeguards in place" to prevent public release of State regulators' documents). MetLife also faced specific due process harms if not provided the opportunity to review those documents. Without diminishing the importance of public access, Better Markets faces no such harm.

[4] Better Markets overstates the holding of *American Professional Agency*. In that case, the district court stated only that a seal "might be appropriate, *for example*, 'to protect trade secrets . . . .'" 121 F. Supp. 3d at 25 (emphasis added). The opinion did not suggest that harm to competitive standing was limited to protection of trade secrets.

*also Sealed Case*, 237 F.3d at 666 (explaining that "only rarely, if ever, might the remaining five *Hubbard* factors counterbalance the 'strength of the . . . privacy interests asserted'") (internal marks omitted). This factor weighs heavily in favor of maintaining the seal.

*5. The Possibility of Prejudice*

The discussion of factor four above demonstrates well the possibility of prejudice to MetLife and FSOC. Additionally, the parties have amply described the prejudice they would suffer if MetLife's "highly sensitive [materials which] cover virtually every aspect of MetLife's operations, business model, and balance sheet" were divulged to competitors, MetLife Opp'n at 18-19, or if FSOC were "deprive[d] . . . of an important source of information throughout the designation process." FSOC Opp'n at 12.

Better Markets argues that MetLife and FSOC must provide the court with "a true assessment of the likelihood of prejudice" and that the parties have "failed to make a convincing showing of prejudice." Better Mkts. Reply [Dkt. 127] at 21-22. But the record in this case contains no less than the materials relied upon by FSOC to determine the full scope of MetLife's potential financial vulnerability and its importance to the economy of the United States. Upon its own review of these documents, the Court requires little additional convincing that the parties would be prejudiced by their release. The information that remains sealed is plainly sensitive and warrants protection despite its necessary relevance to federal-court litigation.

This factor weighs heavily in favor of maintaining the seal.

*6. The Purposes for Which the Documents Were Introduced*

The standard of review at issue in *MetLife I* was whether FSOC's determination arbitrary and capricious. *See* 12 U.S.C. § 5323(h) ("Review of [an action to rescind the determination in federal court] shall be limited to whether the final determination made . . . was arbitrary and capricious."). As a result, FSOC and MetLife filed the joint appendix to support

and contest the FSOC designation of MetLife as a systemically important financial institution. As a matter of Administrative Law 101, evidence extraneous to the determination by FSOC was not before the Court. Both parties cited to the joint appendix as they briefed the merits. This Court reviewed the joint appendix to understand and evaluate the briefs (although its opinion was ultimately based on the procedural requirements of administrative law and not the particulars of the FSOC or MetLife financial analyses).

When considering the purpose of the documents in the joint appendix, the Court notes that the joint appendix was developed through the open and voluntary cooperation of MetLife, which was acting with the understanding that its confidential business information would be protected by § 5322(d)(5)(A). Thus, to the extent that the joint appendix includes MetLife's own documents that might have supported FSOC's designation of MetLife, it includes those documents largely due to the broad investigative powers available to FSOC and its promise of confidentiality, not because MetLife intended those documents to appear in public. Described otherwise, many of MetLife's internal documents were submitted to the Court by FSOC and against MetLife's interests. Notwithstanding, it cannot be said that the filing of such sensitive documents was inadvertent, unexpected, or erroneous; they were, in fact, critical to FSOC's evaluation of MetLife's role in the overall U.S. economy, which was the central question at issue.

Better Markets argues that the *Hubbard* court found that the purpose for which materials were submitted was "'the single most important element' in [its] analysis." Better Mkts. Reply at 25. The quote is accurate, but places too much weight on this factor vis-à-vis this case. *Hubbard* actually stated that "[t]he single most important element in our conclusion that the proper balance has not been struck *in this case* is the fact that the documents at issue were

introduced for the sole purpose of demonstrating the unlawfulness of the search and seizure" and that "it would be ironic indeed if one who contests the lawfulness of a search and seizure were always required to acquiesce in a substantial invasion of the interests simply to vindicate them." *Hubbard*, 650 F.2d at 321 (emphasis added). All that the quoted language stands for is that a district court is to examine all six of the *Hubbard* factors but may, as the D.C. Circuit did in *Hubbard* itself, find that one factor is more important in the decision than the rest.

The Court finds that, in this case, the purpose for which the documents were introduced is not the most important factor in the *Hubbard* analysis by far, although the reason for which the joint appendix was compiled and submitted might otherwise favor its disclosure. Both FSOC and MetLife depended upon extremely confidential financial and planning documents from MetLife and State examiners in the context of administrative and litigation decisions. The fact of administrative consideration or appeal should not deprive either government agencies or the private entity of shared and legitimate needs to consider wholly-private information in confidence.

## IV. CONCLUSION

On balance,[5] the six *Hubbard* factors lead this Court to deny Better Markets' Motion to Unseal the Record, Dkt. 121. A memorializing Order accompanies this Opinion.

Date: September 18, 2018

ROSEMARY M. COLLYER
United States District Judge

[5] The fact of objection and the extent of prior public access are largely neutral factors here. If they did support unsealing, though, the privacy and prejudice concerns would still outweigh the other factors.